19697

SUPERIOR AUTOMOBILE INSURANCE COMPANY, Respondent, v. Harvey W. MANERS et al., Defendants, of whom Ford Motor Credit Company is, Appellant.

(199 S. E. (2d) 719)

258

*Messrs. Spratt & Spratt,* of York, and *Robinson, Mc-Fadden, Moore & Pope,* of Columbia, *for Appellant,* cite:

*Messrs. George A. Gill, Jr.,* and *John C. Hayes,* of Rock Hill, *for Respondent,* cite:

September 25, 1973.

*Per Curiam:*

This appeal arises out of a foreclosure action wherein the cardinal issue is whether the respondent Superior has a valid mortgage lien upon certain real property superior to a judgment lien held by appellant Ford. After full consideration of the record and briefs of counsel, we are of the opinion that the decree of the circuit court, which in pertinent part will be published herewith, soundly and correctly disposed of all issues in the cause. Accordingly, the judgment of the lower court is

Affirmed.

## ORDER OF JUDGE HAYES

This matter comes before the Court upon exceptions to the Special Referee's Report. Such report is reversed in the particulars set forth herein and affirmed in all other respects.

These actions are for the foreclosure of certain real estate mortgages given by Harvey W. Maners and Mazle L.

Maners (Maners) to First Federal Savings & Loan Association of Rock Hill (First Federal) and Superior Automobile Insurance Company (Superior), and were consolidated for trial by consent of the parties.

There was no exception to the finding of the Special Referee as to the priority of the lien of the First Federal mortgage and, pursuant to a consent order, the property covered by that mortgage, referred to in the proceedings as "Milton Avenue" was sold by the Special Referee. The proceeds of the sale were sufficient to substantially satisfy the First Federal mortgage and the costs with no surplus for application to either Superior mortgage or to the Ford judgment. This sale, which has been confirmed by the Court, extinguished both the liens of Superior and Ford in that property and also served to terminate the First Federal foreclosure. Thus, only the question of priorities of the liens of Superior and Ford as to the Saluda Street property need be determined.

## FINDINGS OF FACT

1. On May 19, 1961, Maners made, executed and delivered to Superior their promissory note in the sum of Forty-Two Thousand and no/100 ($42,000.00) Dollars with interest at the rate of six (6%) per cent per annum payable in one hundred twenty (120) monthly installments of Four Hundred Sixty-six and 31/100 ($466.31) Dollars each. As security for said note, Maners gave to Superior a mortgage on real estate and personal property situated on or near Saluda Street in Rock Hill and on real estate situated on Milton Avenue in Rock Hill, the latter being the residence of Maners, such mortgage was duly recorded on May 22, 1961.

2. On July 29, 1964, Maners made, executed and delivered to Superior their promissory note in the sum of Seven Thousand and no/100 ($7,000.00) Dollars with interest at the rate of six (6%) per cent to be repayable upon demand, with interest payable monthly in advance. This note recited

that it was secured by a mortgage on real estate and personal property in York County which, inferably, referred to the mortgage given May 19, 1961, to secure the note given that date.

3. On October 23, 1967 Ford filed a judgment against Maners.

4. On December 30, 1967, Maners and Superior entered into a "Modification Agreement" reciting the May 19, 1961 note, stating that the indebtedness had been reduced to Twenty-Eight Thousand and no/100 ($28,000.00) Dollars and extending the period for repayment for fifteen (15) years at Two Hundred Thirty-Six and 28/100 ($236.28) Dollars per month commencing on February 5, 1968; said Agreement containing the following language:

"Whereas, Superior Automobile Insurance Company, the holder of said note, has agreed to modify the payment terms of said note, leaving in effect all other features of the note and the mortgage which was entered into by way of security for said note;"
and further:

" . . . the undersigned agree that this is a modification of the payments only, with all other features of the note and mortgage to remain as originally entered into."

5. On the date of the execution of the "Modifying Agreement" the balance due on the May 19, 1961, Superior note was Twenty Thousand Two Hundred Seventeen and 76/100 ($20,217.76) Dollars, and the balance due on July 29, 1964, Superior note was in excess of Seven Thousand and no/100 ($7,000.00) Dollars due to delinquency of interest payments. It appears from the record that whatever the latter amount may have been, the sum of Seven Thousand Seven Hundred Eighty-Two and 24/100 ($7,782.24) Dollars was added to the former sum to arrive at the figure of Twenty-Eight Thousand and no/100 ($28,000.00) Dollars as set forth in the "Modifying Agreement".

## CONCLUSIONS

The issue at hand is, in essence, the effect of the December 30, 1967, "Modifying Agreement". The Special Referee concluded that such was a novation; and that as such it created a new debt unsecured by the May 19, 1961, mortgage. Such finding relegated Superior's claim against Maners to a position inferior to the general lien against the Maners' property in Ford's favor by virtue of its judgment against Maners.

Neither party questions the right of parties to a note to modify the terms of such note. Such right was early recognized by the Supreme Court in *Elders v. Feutrel,* 110 S. C. 307, 96 S. E. 541. The contention of Ford, and the finding of the Special Referee, is that the modification here is in fact a novation and the debt arises as of the date of the "Modifying Agreement", rather than as of the date of the original instrument or instruments. With this I cannot agree.

A novation is "a mutual agreement between all parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor." *Smith Bros. Grain Co. v. Adluh Milling Co.,* 128 S. C. 434, 122 S. E. 868. To create a novation, there must be an intention for such. *Ophuls & Hill, Inc. v. Carolina Ice & Fuel Co.,* 160 S. C. 441, 158 S. E. 824. The party alleging a novation has the burden of proving such. *Ophuls & Hill, supra.* The circumstances attending the transaction alleged to be a novation must show the intention to substitute a new obligation in place of the existing one. *Scott v. Stone,* 149 S. C. 386, 147 S. E. 449.

From the foregoing cases, it is clear that there can be no novation unless this is the intent of both parties. The Special Referee, in finding that such intention was present, took into consideration:

(1) certain testimony by a Mr. Whitney, Senior Vice President of Superior,

(2) the fact that the amount stated in the "Modifying Agreement" totaled the amount due on the two notes rather than the one secured note,

(3) certain bookkeeping procedures by Superior in handling the sum due under the "Modifying Agreement".

The Special Referee took little cognizance of the language appearing on the face of the "Modifying Agreement". However, these documents are to be construed like other contracts, and to ascertain the intention of an instrument resort is first to be had to its language, and if such is perfectly plain and capable of legal construction, such language determines the force and effect of the instrument. Extrinsic facts cannot, in such cases, give the instrument a different construction from that imported by its terms. 17 Am. Jur. (2d), Contracts, § 241.

The language appearing on the face of the "Modifying Agreement" is clear and unambiguous and negatives an intention for there to be a novation. On its face the "Modifying Agreement" indicates that it is just what it says it is—a modification. Thereon it says:

" . . . the holder of said note, has agreed to modify the payment terms of said note, *leaving in effect all other features of the note and the mortgage . . ."* (emphasis added) and further

" . . . this is a modification of the payments only, with all other features of the note and mortgage to remain as originally entered into."

The "Modifying Agreement" recognizes the existing May 19, 1961 note and mortgage and, in effect, republishes them. The sole effect of this agreement is to change, alter, or introduce new elements into the original note leaving the general purpose of such and its subject matter intact. Such is a modification. Black's Law Dictionary (4th Ed., 1957) at page 1155.

The facts relied on by the Special Referee cannot alter the clear and unambiguous language appearing on the face of the "Modifying Agreement". True, Mr. Whitney testified that the two notes "merged" in the Modifying Agreement, but in response to questions propounded by Ford's own counsel, he further testified that he was seeking to collect the original note and foreclose the mortgage securing it. On re-direct he testified that he was attempting to collect both notes "as modified" and under the existing mortgage. Were his testimony otherwise, in light of the aforestated rule, such could not alter the clearly stated intention of the instrument.

The combining of the amounts due under the two notes into one sum in the Modifying Agreement likewise cannot affect the clear intention of the note. The agreement repeatedly sets forth that its purpose is only to modify, and the original May 19, 1961, note and mortgage are to remain "in effect" and "as originally entered into".

The bookkeeping procedure by Superior is again an extrinsic fact which cannot alter the written instrument. Such procedure was employed by Superior to conform with the modification agreement. Further, it evinces no intention of the parties for a novation.

In light of the above, I conclude that there is no novation present here and the original note given by Maners on May 19, 1961, is of full force and effect, except as modified by the instrument under consideration here, and is secured by the mortgage of May 19, 1961, such mortgage being a first lien on the Saluda Street property and a second lien on the Milton Avenue property.

However, the "Modifying Agreement" is not an umbrella under which Superior can pull the amount due on the second note given to it by Maners. The Special Referee found the second note to be unsecured by the May 19, 1961, mortgage, and with this conclusion I agree.

That mortgage contained no language which would allow a later note to be secured under it. The mortgage nowhere contains any language which would allow it to act as security for any debt other than that recited in it.

Therefore, only the debt due under the May 19, 1961, note is secured by the mortgage of that date. The latter note is unsecured and, in particular, is inferior to the judgment lien held by Ford. This gives rise to the further problem of how is the secured amount to be determined as both debts were added together under the "Modifying Agreement" with only one payment thereon to be made. The secured amount would be Twenty Thousand Two Hundred Seventeen and 76/100 ($20,217.76) Dollars less the amount paid on such sum since the "Modifying Agreement" was entered into (the total of the pro rata share of each payment attributable to the May 19, 1961, note).

Payments under the "Modifying Agreement" amount to One Thousand Five Hundred Sixty-Nine and 39/100 ($1,-569.39) Dollars. The May 19, 1961, note represented 72.21 per cent of the Twenty-Eight Thousand and no/100 ($28,-000.00) Dollars stated in the "Modifying Agreement". Therefore, I find that One Thousand One Hundred Thirty-Three and 23/100 (($1,133.23) Dollars has been paid toward the May 19, 1961, note since the "Modifying Agreement" was entered into, and the amount due Superior under this note as of March 31, 1970, was Nineteen Thousand Eighty-Four and 53/100 ($19,084.53) Dollars.

Having concluded that Superior's lien was junior to the lien of Ford, the Special Referee concluded that attorneys' fees were academic and held the question in abeyance for consideration by the Court if such became necessary. Superior's note and mortgage of May 19, 1971, provides for ten (10%) per cent attorneys' fees. I find that Superior is entitled to recover attorneys' fees and that ten (10%) per cent is reasonable.

I conclude, therefore, that:

1. That Superior has a first mortgage lien upon the Saluda Street real estate described in the Complaint in such amount as is traceable to the May 19, 1961, note;

2. That Ford's judgment ranks as a second lien upon the Saluda Street real estate;

3. That such interest as Superior has under the July 29, 1964, note is subsequent to and subordinate to the lien of Ford's judgment.