644 S.E.2d 740

**Joseph H. MOORE, Appellant,**

v.

**M.M. WEINBERG, Jr. and Weinberg and Brown, L.L.P., Respondents.**

**No. 4209.**

Court of Appeals of South Carolina.

Submitted Feb. 1, 2007.

Decided Feb. 20, 2007.

Rehearing Denied May 17, 2007.

210

212

A. Camden Lewis, Peter D. Protopapas and Brady R. Thomas, all of Columbia, for Appellant.

Harry C. Wilson, Jr. and David C. Holler, both of Sumter, for Respondents.

ANDERSON, J.:

Joseph Moore (Moore) appeals the grant of summary judgment with regard to his claims of negligence, conversion, and civil conspiracy against M.M. Weinberg, Jr. and Weinberg and Brown, L.L.P. (collectively Weinberg). The trial court granted Weinberg's summary judgment motion based on the doctrine of novation. We affirm in part, reverse in part, and remand.[1]

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

## FACTUAL/PROCEDURAL BACKGROUND

In the late 1980s, Clarence Wheeler and Joseph Moore entered into a business relationship where Wheeler placed video-poker machines in Moore's service stations. Moore loaned Wheeler small amounts of money on a yearly basis for business expenses, such as buying video-poker machines and licenses. Frequently, Moore and Wheeler either renegotiated these loans, or Wheeler paid the outstanding balance and he and Moore arranged a new loan.

In November 1999, Wheeler executed a note to Moore in the amount of $92,000. The note provided for a built-in premium of $12,000. From the $92,000, Moore gave Wheeler $80,000 and kept the $12,000 premium. In order to secure his obligation, Wheeler assigned Moore $80,000, to be deducted from the anticipated proceeds from litigation over the sale of Wheeler's music business. An escrow account containing $100,000 was held by the Clarendon County Clerk of Court pending the outcome of Wheeler's litigation. On November 18, 1999, Wheeler's attorney, M.M. Weinberg, Jr., the same attorney representing him in the litigation, prepared the Assignment, that provided, in part:

> Clarence Wheeler does by this instrument assign to Joseph Moore so much of any recovery that he may make from the debt owed to him by A & E, Inc. and the escrow account, which is pending as a result of said litigation, unto said Joseph Moore, his heirs and assigns to completely satisfy said debt.

> This assignment shall be and is to the extent of the money owed at the time of the execution of the assignment.

Wheeler settled the litigation and was to receive the $100,000 from the escrow account. The opposing party was to receive the $10,829.16 in interest the account had accrued. When Clarendon County Clerk of Court transferred the funds from the escrow account to Weinberg, he disbursed $74,458.24 to Wheeler, paid $520 to Wheeler's former secretary, and retained $25,000 as his attorney's fee.[2] In executing these

---

2. Weinberg represented Wheeler on a contingency fee basis. The fee agreement provided that Wheeler would pay Weinberg one-third of his recovery; they later renegotiated the fee to one-fourth of the recovery.

disbursements Weinberg forgot or "overlooked [the] Assignment."

After receiving the settlement money from Weinberg, Wheeler tendered $50,000 to Moore's son in payment of the debt. Moore was out of town at the time. Subsequently, Moore notified Wheeler that he had not fully satisfied his loan obligation. In June, 2002, Moore and Wheeler added a handwritten note at the end of the 1999 original: "I Clarence Wheeler agree that I owe Joseph H. Moore $80,000.00 since March 17, 2000 and agree to pay him 6% [i]nterest on the $80,000.00 balance. Clarence Wheeler payed [sic] $50,000 on July 19, 2002." Both Moore and Wheeler signed the addition to the note.

In October 2002, attorney John Land contacted Weinberg by telephone on Moore's behalf concerning the release of the assigned funds.[3] Weinberg agreed to consult with Wheeler and respond to Moore's demand for payment of Wheeler's outstanding obligation. After receiving no response, Land informed Weinberg by letter, dated October 14, 2002, that Moore had an absolute security in the released funds through the Assignment and would not relieve Wheeler of his remaining indebtedness.

On April 15, 2003, Moore initiated this action against Weinberg, alleging negligence, conversion, and civil conspiracy. Weinberg answered and asserted, *inter alia*, a defense based on the doctrine of novation. Both Moore and Weinberg filed motions for summary judgment. The trial court granted Weinberg's motion for summary judgment, finding the handwritten addendum to the 1999 original note constituted a novation, thus relieving Weinberg of any duty he may have owed Moore.

### STANDARD OF REVIEW

"In reviewing the grant of summary judgment, [an appellate court] applies the same standard that governs the trial court under Rule 56, SCRCP: summary judgment is proper when

---

**3.** Land clarified in his letter that, though he represented Moore, he would not take a case against Weinberg due to their relationship. Land emphasized he hoped the matter could be resolved without further action.

there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Pittman v. Grand Strand Entm't, Inc.*, 363 S.C. 531, 536, 611 S.E.2d 922, 925 (2005); *Eagle Container Co., LLC v. County of Newberry*, 366 S.C. 611, 622 S.E.2d 733 (Ct.App.2005); *B & B Liquors, Inc. v. O'Neil*, 361 S.C. 267, 603 S.E.2d 629 (Ct.App.2004). In determining whether any triable issue of fact exists, the evidence and all inferences that can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Medical Univ. of South Carolina v. Arnaud*, 360 S.C. 615, 602 S.E.2d 747 (2004); *Rife v. Hitachi Constr. Mach. Co., Ltd.*, 363 S.C. 209, 609 S.E.2d 565 (Ct.App.2005). If triable issues exist, those issues must go to the jury. *Mulherin–Howell v. Cobb*, 362 S.C. 588, 608 S.E.2d 587 (Ct.App.2005).

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Helms Realty, Inc. v. Gibson–Wall Co.*, 363 S.C. 334, 611 S.E.2d 485 (2005); *BPS, Inc. v. Worthy*, 362 S.C. 319, 608 S.E.2d 155 (Ct.App.2005). On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party. *Willis v. Wu*, 362 S.C. 146, 607 S.E.2d 63 (2004); *see also Schmidt v. Courtney*, 357 S.C. 310, 592 S.E.2d 326 (Ct.App. 2003) (stating that all ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party).

Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Gadson v. Hembree*, 364 S.C. 316, 613 S.E.2d 533 (2005); *Montgomery v. CSX Transp., Inc.*, 362 S.C. 529, 608 S.E.2d 440 (Ct.App.2004). Even when there is no dispute as to evidentiary facts, but only as to the conclusions or inferences to be drawn from them, summary judgment should be denied. *Baugus v. Wessinger*, 303 S.C. 412, 401 S.E.2d 169 (1991); *Nelson v. Charleston County Parks & Recreation Comm'n*, 362 S.C. 1, 605 S.E.2d 744 (Ct.App.2004). When

reasonable minds cannot differ on plain, palpable, and indisputable facts, summary judgment should be granted. *Ellis v. Davidson,* 358 S.C. 509, 595 S.E.2d 817 (Ct.App.2004). The party seeking summary judgment has the burden of clearly establishing the absence of a genuine issue of material fact. *McCall v. State Farm Mut. Auto. Ins. Co.,* 359 S.C. 372, 597 S.E.2d 181 (Ct.App.2004). Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings. *Regions Bank v. Schmauch,* 354 S.C. 648, 582 S.E.2d 432 (Ct.App.2003). The nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *Rife,* 363 S.C. at 214, 609 S.E.2d at 568.

"The purpose of summary judgment is to expedite the disposition of cases which do not require the services of a fact finder." *Dawkins v. Fields,* 354 S.C. 58, 69, 580 S.E.2d 433, 438 (2003) (quoting *George v. Fabri,* 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001)); *Rumpf v. Massachusetts Mut. Life Ins. Co.,* 357 S.C. 386, 593 S.E.2d 183 (Ct.App.2004). Summary judgment is a drastic remedy and should be cautiously invoked to ensure that a litigant is not improperly deprived of a trial on disputed factual issues. *Helena Chem. Co. v. Allianz Underwriters Ins. Co.,* 357 S.C. 631, 594 S.E.2d 455 (2004); *Hawkins v. City of Greenville,* 358 S.C. 280, 594 S.E.2d 557 (Ct.App.2004).

## *LAW/ANALYSIS*

### I. Novation

Moore argues the trial court erred in granting summary judgment based on novation as a defense to negligence, conversion, and civil conspiracy claims. We agree.

Novation is a defense to contract claims. "A novation is an agreement between all parties concerned for the substitution of a new obligation between the parties with the intent to extinguish the old obligation." *Wayne Dalton Corp. v. Acme Doors, Inc.,* 302 S.C. 93, 96, 394 S.E.2d 5, 7 (Ct.App. 1990) (citing *Ophuls & Hill, Inc. v. Carolina Ice & Fuel Co.,* 160 S.C. 441, 158 S.E. 824 (1931)). There must be an intention

218

to create a novation. *Adams v. B D, Inc.*, 297 S.C. 416, 377 S.E.2d 315 (1989). There can be no novation unless both parties so intend. *Id.* The party asserting a novation has the burden of proving it. *Superior Auto. Ins. Co. v. Maners*, 261 S.C. 257, 199 S.E.2d 719 (1973). "The circumstances attending the transaction alleged to be a novation must show the intention to substitute a new obligation in place of the existing one." *Wellman, Inc. v. Square D Co.*, 366 S.C. 61, 72, 620 S.E.2d 86, 92 (Ct.App.2005). An addendum that modifies a pre-existing agreement, but does not extinguish it, is not a novation. *Parker v. Shecut*, 340 S.C. 460, 531 S.E.2d 546 (Ct.App.2000), *rev'd on other grounds* 349 S.C. 226, 562 S.E.2d 620 (2002).

In order to effectuate a novation by the substitution of a new obligation, both contracting parties must consent that the new agreement is to replace the old one and their consent must be apparent. *See Superior*, 261 S.C. at 263, 199 S.E.2d 719, and 199 S.E.2d at 722 (finding language appearing on the face of the "Modifying Agreement" was clear and unambiguous and negated an intention for there to be a novation). If only the debtor intends that the existing contract should be discharged by the new agreement, there is no novation; the creditor must concur.

A novation may be broadly defined as a substitution of a new obligation for an old one, thereby extinguishing the old debt. More specifically, novation is the substitution by mutual agreement of one debtor or one creditor for another, whereby the old debt is extinguished. It is a mode of extinguishing one obligation by creating another; the substitution, not of a new paper or note, but of a new obligation in lieu of an old one, with the effect of paying, dissolving, or otherwise discharging it.

Consequently, a novation may be accomplished in three ways:

(1) By the substitution of a new obligation between the same parties, with intent to extinguish the old obligation;

(2) By the substitution of a new debtor in the place of the old one, with intent to release the latter;

(3) By the substitution of a new creditor in the place of an old one, with intent to transfer the rights of the latter to the former.

■ While Moore may have a cause of action in contract against Wheeler, his causes of action for conversion, negligence, and civil conspiracy against Weinberg sound in tort. Tort causes of action are not transformed into actions in contract simply because they arise out of circumstances involving a contract. As a matter of law, the trial court erred in granting summary judgment on the ground of novation.

Moore maintains that, even if novation were an applicable defense, the trial court erred in granting Weinberg summary judgment on novation when the trial court itself noted material issues of fact in dispute. Because we determine novation is not a defense in the case *sub judice,* we need not consider this issue. *Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 518 S.E.2d 591 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## II.  Assignment

An assignment is the act of transferring to another all or part of one's property, interest, or rights. *Black's Law Dictionary* 119 (6th ed. 1992). It includes transfers of all kinds of property, including negotiable instruments. *Id.* The assignment of an account involves the transfer to the assignee the right to have money, when collected, applied to the payment of his debt. *Id.* The interest in the property assigned can be present, future, or contingent; it may represent contract rights to money, property, or performance, or rights to causes of action. 5 S.C. Jur. *Assignments* § 2 (2006).

■ Three elements constitute an assignment: (1) an assignor;  (2) an assignee;  and (3) transfer of control of the thing assigned from the assignor to the assignee. *Donahue v. Multimedia, Inc.,* 362 S.C. 331, 338, 608 S.E.2d 162, 165 (Ct.App.2005) (citing *Leon v. Martinez,* 84 N.Y.2d 83, 614 N.Y.S.2d 972, 638 N.E.2d 511 (1994)). "An assignment of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the

assignee acquires a right to such performance." Restatement (Second) of Contracts § 317(1) (1981). South Carolina jurisprudence has long recognized that a chose in action can be validly assigned in either law or equity. *Slater Corp. v. S.C. Tax Comm'n*, 280 S.C. 584, 587, 314 S.E.2d 31, 33 (Ct.App. 1984) (citing *Forrest v. Warrington*, 2 S.C.Eq. (2 Des.) 254 (1804)); *see also* S.C. Jur. *Assignments* § 19 (2006) ("A chose in action is the right of proceeding in a court to procure the payment of a sum of money, or the right to recover a personal chattel or a sum of money by action. . . . In South Carolina a chose or thing in action is statutorily included in one's personal property and is assignable.").

██ An assignee stands in the shoes of its assignor. *Twelfth RMA Partners, L.P. v. Nat' l Safe Corp.*, 335 S.C. 635, 639–40, 518 S.E.2d 44, 46 (Ct.App.1999) ("[T]he assignee should have all the same rights and privileges, including the right to sue . . . as the assignor.").

In the present case, Wheeler assigned his right in the litigation proceeds and escrow account to Moore, thus giving Moore the right to the funds in payment of the debt Wheeler owed. At the conclusion of the litigation, the Clarendon County Clerk of Court transferred the funds held in escrow to Weinberg's trust account. He disbursed the funds to Wheeler. The Assignment, however, directed Weinberg to pay Moore the outstanding balance of Wheeler's debt from the assigned funds rather than releasing the funds to Wheeler.

Moore asserts the trial court erred in granting the motion for summary judgment because he presented evidence sufficient to prove all the elements for each of his three causes of action against Weinberg: (1) negligence; (2) conversion; and (3) civil conspiracy. As to negligence and conversion we agree. As to civil conspiracy, we disagree.

## A. Negligence

██ In order to prevail in a negligence cause of action, the plaintiff must establish: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached the duty by a negligent act or omission; (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) the plaintiff suffered an injury or damages. *Steinke v. S.C.*

*Dep't of Labor, Licensing & Regulation,* 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999); *see also Thomasko v. Poole,* 349 S.C. 7, 561 S.E.2d 597 (2002). "An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff. Without a duty, there is no actionable negligence." *Bishop v. S.C. Dep't of Mental Health,* 331 S.C. 79, 86, 502 S.E.2d 78, 81 (1998) (citing *Rogers v. S.C. Dep't of Parole & Cmty. Corr.,* 320 S.C. 253, 464 S.E.2d 330 (1995)).

"The issue of negligence is a mixed question of law and fact." *Miller v. City of Camden,* 317 S.C. 28, 31, 451 S.E.2d 401, 403 (Ct.App.1994), *aff'd as modified,* 329 S.C. 310, 494 S.E.2d 813 (1997). First, the court must determine, as a · matter of law, whether the law recognizes a particular duty. *Ellis v. Niles,* 324 S.C. 223, 479 S.E.2d 47 (1996). If there is no duty, the defendant is entitled to a judgment as a matter of law. *Id.* If a duty does exist, the jury then determines whether a breach of the duty that resulted in damages occurred. *Miller,* 317 S.C. at 31, 451 S.E.2d at 403; *see also Creighton v. Coligny Plaza Ltd. P'ship,* 334 S.C. 96, 512 S.E.2d 510 (Ct.App.1998).

Generally, duty is defined as the obligation to conform to a particular standard of conduct toward another. *Murray v. Bank of America, N.A.* 354 S.C. 337, 343, 580 S.E.2d 194, 197 (Ct.App.2003) (citing *Shipes v. Piggly Wiggly St. Andrews, Inc.,* 269 S.C. 479, 483, 238 S.E.2d 167, 168 (1977)).

Our search of South Carolina jurisprudence reveals the issues presented in this case are novel. However, many other jurisdictions have established that attorneys owe a duty to third parties in factually congeneric circumstances.

The Idaho Court of Appeals has determined that from the outset of the attorney-client relationship, a law firm is obliged to disburse, and the client has a right to receive, any funds that he is entitled to. *Bonanza Motors, Inc. v. Webb,* 104 Idaho 234, 657 P.2d 1102, 1104 (Ct.App.1983). Moreover, the client's right to the future performance of the law firm's obligation may be assigned. *Id.* (citing Restatement (Second) of Contracts § 321(1) (1979); 3 S. Williston, *A Treatise on the Law of Contracts* § 413 (3d ed. 1960)). The fact that the performance of this obligation occurs later, when proceeds of

the lawsuit arrive, does not defeat an assignment. *Id.* Nor is an assignment defeated by the fact that the client's right to receive money was conditioned upon the availability of proceeds from the action against the insurance company. *Id.* An adequately identified conditional right may be subject to assignment. *Id.* (citing Restatement § 320; 4 A. Corbin, *Corbin on Contracts* § 874 (1951)).

The Idaho court emphasized:

> Notice of an assignment puts the obligor on guard. *The obligor is liable to the assignee if the funds assigned are subsequently paid to the assignor in violation of the assignment.* Once a valid assignment has been made, the assignor cannot cancel or modify the assignment by unilateral action without the assent of the assignee; nor may he defeat the rights of the assignee.

*Id.* (citing *Wymer v. Wymer,* 16 B.R. 497 (B.A.P. 9th Cir. 1980); *Shore v. Shore,* 71 Cal.App.3d 290, 139 Cal.Rptr. 349 (1stDist.1977); *Chapman v. Tyler Bank Trust Co.,* 396 S.W.2d 143 (Tex.Civ.App.1965); 4 A. Corbin § 890) (emphasis added).

Similarly, in *Brinkman v. Moskowitz,* 38 Misc.2d 950, 238 N.Y.S.2d 876, 876–77 (N.Y.Sup.App.Term.1962), the court held where an attorney had notice of the assignment of a portion of the proceeds of his client's claim for personal injuries to the plaintiff, the attorney was liable to plaintiff for the resulting damage in distributing the proceeds without regard to the assignment. Moreover, the Nevada Supreme Court determined that when a client assigns rights to the proceeds of a tort action to a creditor, those proceeds no longer belong to the client and an attorney is not obligated to pay those funds to his client. *Achrem v. Expressway Plaza Ltd. P'ship,* 112 Nev. 737, 917 P.2d 447, 450 (1996) (citing *Bonanza Motors,* 657 P.2d at 1104; *Romero v. Earl,* 111 N.M. 789, 810 P.2d 808 (1991); *Leon v. Martinez,* 84 N.Y.2d 83, 614 N.Y.S.2d 972, 638 N.E.2d 511, 514 (1994); *Aiello v. Levine,* 44 Misc.2d 1067, 255 N.Y.S.2d 921 (Dist.Ct.1965); *Brinkman,* 238 N.Y.S.2d at 876–77). In addition, the Nevada Supreme Court concluded that if a conflict exists between the client's interests and the creditor's interests, the attorney should deposit the settlement proceeds in a trust fund account and request a court to direct the fund's distribution. *Achrem,* 917 P.2d at 450.

The Ohio Court of Appeals found a client who made a valid assignment of part of his right to settlement proceeds was no longer entitled to receive the full amount of the settlement. *Hsu v. Parker*, 116 Ohio App.3d 629, 688 N.E.2d 1099 (1996). "After notice of the assignment has been given to the obligor, or knowledge thereof received by him in any manner, the assignor has no remaining power of release. The obligor must pay the assignee." *Id.* at 1102 (quoting 4 A. Corbin § 890). *See also Berkowitz v. Haigood*, 256 N.J.Super. 342, 606 A.2d 1157, 1160 (Law Div.1992) ("Since the client has the power to validly assign the proceeds, the attorney has the obligation to honor such an assignment, if properly notified. The attorney does not violate the [Rules of Professional Conduct] because the funds in his trust account no longer belong to his client. The funds belong to the assignee of the client and, therefore, the client is not entitled to receive them under RPC 1.15(b).").

■ The South Carolina Supreme Court has recognized the relevance and admissibility of the South Carolina Rules of Professional Conduct, Rule 407, SCACR, in assessing the legal duty of an attorney in a malpractice action. *Smith v. Haynsworth, Marion, McKay & Geurard*, 322 S.C. 433, 472 S.E.2d 612, 613 (1996). Adopting the position of the Georgia Supreme Court, the *Smith* court declared:

This is not to say, however, that all of the Bar Rules would necessarily be relevant in every legal malpractice action. In order to relate to the standard of care in a particular case, we hold that a Bar Rule must be intended to protect a person in the plaintiff's position or be addressed to the particular harm.

*Id.* at 437, 472 S.E.2d at 613 (quoting *Allen v. Lefkoff, Duncan, Grimes Dermer*, 265 Ga. 374, 453 S.E.2d 719, 721–22 (1995)). Failure to comply with the Rules of Professional Conduct is not negligence *per se,* but merely one circumstance that may be considered along with other facts and circumstances in determining whether an attorney acted with reasonable care. *Id.* at 437 n. 6, 472 S.E.2d at 613 n. 6. Additionally, this court has found the Rules of Professional Conduct relevant in deciding what constitutes reasonable attorney's fees. *See Weatherford v. Price*, 340 S.C. 572, 581, 532 S.E.2d 310, 315 (Ct.App.2000) ("We, therefore, conclude that our supreme

court has not ruled that a fee agreement which violates Rule 1.5, RPC, is unenforceable in all circumstances as against public policy. This does not mean, however, that the Rules of Professional Conduct have no bearing on the issue.")

The applicable part of Rule 1.15 provides:

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive. . . .

(e) When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

Rule 1.15, RPC, Rule 407, SCACR. The comments provide the following clarification:

Paragraph (e) also recognizes that third parties may have lawful claims against specific funds or other property in a lawyer's custody, such as a client's creditor who has a lien on funds recovered in a personal injury action. A lawyer may have a duty under applicable law to protect such third-party claims against wrongful interference by the client. In such cases, when the third-party claim is not frivolous under applicable law, the lawyer must refuse to surrender the property to the client until the claims are resolved. A lawyer should not unilaterally assume to arbitrate a dispute between the client and the third party, but, when there are substantial grounds for dispute as to the person entitled to the funds, the lawyer may file an action to have a court resolve the dispute.

Rule 1.15, RPC, Rule 407, SCACR, cmt. 4.

▓▓ Moore offered the opinion of licensed South Carolina attorney Mark Hardee as to the nature of Weinberg's duty. In his affidavit, Hardee advised that "[a]n attorney on notice of an escrow assignment has a duty to that person." Hardee elaborated:

It is well settled under the ethics rules and South Carolina law that an attorney who has knowledge of an assignment cannot dishonor the assignment when disbursing funds if he has knowledge of the assignment. This is true even if his client instructs him to dishonor the assignment and disburse the funds.... Defendants had a duty to the Plaintiff to ensure that assignment was paid or that proper notice was given to the Plaintiff providing him the opportunity to protect his interests. Their failure to do either was a breach of that duty.

Weinberg drafted the Assignment and does not dispute that he had notice of it. He contends he either forgot it or overlooked it. The Rules of Professional Conduct specifically address this particular injury. Moore was a third party entitled to funds in an attorney's possession. Guided by the Rules of Professional Conduct and inculcated by precedent established in other jurisdictions, we conclude Weinberg owed Moore a duty to disburse the assigned funds to Moore.

Weinberg cited a Wisconsin Supreme Court case, *Yorgan v. Durkin*, 290 Wis.2d 671, 715 N.W.2d 160, 165 (2006), in advancing his proposition that without a letter of protection, an attorney is not bound to a third party. A letter of protection is a document by an attorney notifying a creditor that payment will be made when the case is settled or judgment is obtained. *Id.* at 163. In some circumstances, an attorney may agree to be contractually bound by proffering a letter of protection. *Id.* at 165. Such letters are "a common practice by which attorneys representing personal injury plaintiffs ensure their clients will receive necessary medical treatment, even if unable to pay until the case is concluded." *Id.* Weinberg contends Morgan's cause of action fails without a letter of protection binding Weinberg.

The facts in *Yorgan* are distinguishable from facts in this case. In *Yorgan*, the client signed a chiropractor's form "Authorization and Doctor's Lien" directing an attorney to pay the chiropractor and purporting to give the chiropractor a lien against any proceeds the client recovered on a personal injury claim. *Id.* at 162. The client subsequently retained his attorney, who neither acknowledged nor signed the agreement. *Id.* The chiropractor sought recovery under contract

and equitable lien causes of action. *Id.* The Wisconsin court held the chiropractor could not enforce the purported lien against the attorney under a contract cause of action. Nor was the chiropractor entitled to an equitable lien enforceable against the client's attorney. In its decision, the court reasoned:

> [The chiropractor] should have known based on the plain language of the agreement that he might not be protected unless [the attorney] signed the agreement or took some other affirmative action. [The chiropractor] was, or should have been, aware of the potential for harm that an unsigned agreement could create. At the same time, he had at least some ability to seek to ensure his protection by insisting on an attorney's signature on the agreement or a letter of protection.

715 N.W.2d at 168.

A letter of protection offers one method protecting a creditor's interest. However, the absence of a letter of protection does not automatically relieve an attorney of a duty under an assignment. *Moncrief v. Donohoe,* 892 So.2d 379 (Ala.Civ. App.2003) (reversing the grant of summary judgment to an attorney who failed to honor an assignment, noting the assignee's theory of liability was based on a claimed *assignment* of the settlement proceeds and not the unsigned letter of protection). Unlike the factual scenario in *Yorgan,* Weinberg drafted and executed the Assignment and acknowledged the validity of the Assignment in his testimony. Moore had no reason to believe Wheeler's obligation was not secured by the Assignment. In fact, both Moore and Wheeler indicated Moore would not have executed the $92,000 loan without the security the Assignment provided. Weinberg's notice of the Assignment is undisputed. Weinberg's duty to Moore arose out of his knowledge of the Assignment. A letter of protection was not necessary to create that duty.

We hold the trial court erred in granting summary judgment on the negligence cause of action and reverse and remand that cause of action for a trial.

### B. Conversion

"Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal

chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights." *Hawkins v. City of Greenville*, 358 S.C. 280, 297, 594 S.E.2d 557, 566 (Ct.App. 2004) (citing *Crane v. Citicorp Nat'l Servs., Inc.*, 313 S.C. 70, 73, 437 S.E.2d 50, 52 (1993) (superseded by statute on other grounds)). Conversion is a wrongful act that emanates by either a wrongful taking or wrongful detention. *Kirby v. Horne Motor Co.*, 295 S.C. 7, 366 S.E.2d 259 (Ct.App.1988). "Conversion may arise by some illegal use or misuse, or by illegal detention of another's personal property." *Regions Bank v. Schmauch*, 354 S.C. 648, 667, 582 S.E.2d 432, 442 (Ct.App.2003) (citing *Owens v. Andrews Bank Trust Co.*, 265 S.C. 490, 496, 220 S.E.2d 116, 119 (1975); *Castell v. Stephenson Fin. Co.*, 244 S.C. 45, 50–51, 135 S.E.2d 311, 313 (1964)). A plaintiff may prevail upon a claim for conversion by showing the unauthorized detention of property, after demand. *Mackela v. Bentley*, 365 S.C. 44, 614 S.E.2d 648 (Ct.App.2005). The plaintiff must show either title or right to possession of the property at the time of conversion. *Oxford Fin. Cos. v. Burgess*, 303 S.C. 534, 402 S.E.2d 480 (1991).

The Alabama Civil Court of Appeals considered facts similar to those in the instant case to determine whether an attorney committed the tort of conversion. The court reasoned:

> The assignment of the judgment was a transfer of the money to be collected on it; it was an absolute and unconditional appropriation of it to the assignee. The money, when collected by the attorney, was the property of the assignee, and held for his use, and we can perceive no reason why he should not be allowed to maintain this action to recover it after demand made, notice of the assignment of the judgment, having previously been given.... [A]n attorney at law, is the agent of the party, and the principal may appropriate money in his hands to the use of another, after notice of which, if he pays it to the principal like any other agent, he will be responsible to the person to whom the fund really belongs, in an action for money had and received, founded on the implied promise.

*Birmingham News Co. v. Chamblee & Harris*, 617 So.2d 689, 691 (Ala.Civ.App.1993) (quoting *Gayle & Saffold v. Benson*, 3 Ala. 234, 235–36 (1841)).

■ When Weinberg received the funds transferred from Clarendon County Clerk of Court, a portion of the funds belonged to Moore under the Assignment. Weinberg had notice of the Assignment because he drafted it. John Land demanded, on Moore's behalf, payment of the money Wheeler owed. Weinberg's disbursement of the funds to Wheeler instead of Moore raises material questions regarding the claim of conversion. The trial court erred in granting summary judgment on this issue.

### C. Civil Conspiracy

■ The elements a plaintiff must demonstrate in order to prove civil conspiracy include: (1) the combination of two or more people; (2) for the purpose of injuring the plaintiff; (3) causing special damages. *Pye v. Estate of Fox*, 369 S.C. 555, 566–67, 633 S.E.2d 505, 511 (2006). "In order to establish a conspiracy, evidence, either direct or circumstantial, must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise." *Cowburn v. Leventis*, 366 S.C. 20, 49, 619 S.E.2d 437, 453 (Ct.App.2005) (quoting *First Union Nat'l Bank of S.C. v. Soden*, 333 S.C. 554, 575, 511 S.E.2d 372, 383 (Ct.App.1998)); *see also Island Car Wash, Inc. v. Norris*, 292 S.C. 595, 601, 358 S.E.2d 150, 153 (Ct.App.1987). Conspiracy may be inferred from the nature of the acts committed, the relationship of the parties, the interests of the alleged conspirators, and other relevant circumstances. *Id.* Because civil conspiracy is "by its very nature covert and clandestine," it is usually not provable by direct evidence. *Id.*

■ "[A]n attorney is [generally] immune from liability to third persons arising from the performance of his professional activities as an attorney on behalf of and with the knowledge of his client." *Pye*, 369 S.C. at 564, 633 S.E.2d at 509 (quoting *Gaar v. N. Myrtle Beach Realty Co.*, 287 S.C. 525, 528, 339 S.E.2d 887, 889 (Ct.App.1986)). However, the South Carolina Supreme Court cautions that "an attorney may be held liable for conspiracy where, in addition to representing his client, he breaches some independent duty to a third person. . . ." *Id.* at 564, 633 S.E.2d at 509–10 (quoting *Stiles v. Onorato*, 318 S.C. 297, 300, 457 S.E.2d 601, 602 (1995)).

■ Our review of the record in *Cowburn* revealed no evidence of an agreement between the defendants or any indication they joined together for the purpose of injuring the plaintiff. Accordingly, we held no genuine issue of material fact existed to establish a claim for civil conspiracy. 366 S.C. at 49, 619 S.E.2d at 453. In this case, Moore provided no evidence that Weinberg and Wheeler colluded to deprive Moore of the funds he was entitled to under the Assignment. All the evidence contained in the record indicated Weinberg forgot about the Assignment. No material question of fact exists as to the civil conspiracy cause of action. Although the trial court erred in granting the summary judgment on the basis of novation, we may affirm the grant of summary judgment on any ground found in the record. *See* Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal."). Because no material question of fact as to the civil conspiracy cause of action existed, we affirm the trial court's grant of summary judgment solely as to that cause of action.

## CONCLUSION

We hold novation is *NOT* a defense to causes of action sounding in tort. We rule Weinberg owed a legal duty to Moore based on Weinberg's notice of the Assignment. Consequently, the trial court erred in granting summary judgment on the negligence cause of action.

Additionally, we determine because Moore had a valid Assignment to a portion of the escrow account, accompanied by Weinberg's notice of the Assignment, the trial court erred in granting summary judgment on the issue of conversion. Finally, we conclude there is no material question of fact as to Moore's civil conspiracy cause of action. The trial court did not err in granting summary judgment on the civil conspiracy claim.

Accordingly, the order of the trial court is

**Affirmed in Part, Reversed in Part, and Remanded.**

KITTREDGE and SHORT, JJ., concur.