**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

CRM of the Carolinas, LLC, Appellant,

v.

Trevor W. Steel, Respondent.

Appellate Case No. 2020-000597

————————

Appeal From Georgetown County
Joe M. Crosby, Master-in-Equity

————————

Unpublished Opinion No. 2024-UP-226
Heard February 16, 2023 – Filed June 26, 2024

————————

**REVERSED AND REMANDED**

————————

Joseph Clay Hopkins, of Charleston, for Appellant.

Roger Philip Giardino, Jr., of Giardino Law Firm, LLC, of Pawleys Island, for Respondent.

————————

**PER CURIAM:** In this breach of contract action, Appellant CRM of the Carolinas, LLC (Employer) appeals an order of the Master-in-Equity denying Employer's request for damages and attorney's fees. Employer argues the master's finding that Employer was not entitled to a return of its $50,000 payment to Respondent Trevor

W. Steel (Employee) was unsupported by the evidence. Employer also argues the master erred by denying its request for attorney's fees because Employer should have been the prevailing party. We reverse and remand to the master the question of Employer's entitlement to attorney's fees.

## FACTS/PROCEDURAL HISTORY

In late 2016, Employer's president, Michael Keith Errico, recruited Employee to create a pressure washing/painting division of Employer's resort maintenance business, which was based in the town of Pawleys Island. According to Errico, to obtain Employee's services, Employer agreed to pay $50,000 to Employee to enable him to pay off the debt of his own pressure washing business, Clean Image, LLC (Clean Image), also based in Pawleys Island. Employer wrote a $50,000 check to Employee, and a note on the check stub stated, "Goodwill." According to Employee, the $50,000 was for the goodwill of Clean Image—his relationship with Employer "was originally supposed to be a purchase of [Employee's] company, not an employment contract, and that's just where [they] ended up."

An addendum to the parties' written employment contract memorializing the $50,000 payment characterized it as "initial compensation." The addendum also contemplated a future operating agreement for Employer's new pressure washing/painting division that would substitute for the employment agreement. In the meantime, the addendum required Employee's repayment of the $50,000 should his employment terminate before the expiration of three years:

1. This employment contract addendum dated November 10, 2016 supplements and is made a part of the Employment Contract between CRM of the Carolinas, LLC[,] hereby known as "Employer[,]" and Trevor Steel, hereby known as "Employee[.]"[]

2. Employer and Employee agree that in consideration of the execution of the Employment Contract on November 11, 2016, Employer will issue to Employee an initial compensation of Fifty Thousand ($50,000.00).

3. Employer and Employee agree that the above listed compensation will be duly earned after 3 years from the date of execution of the Employment Contract.

4. Employer and Employee agree that should Employee leave the employment of [Employer] before the expiration of said [three-]year period, Employer would be entitled to be reimbursed for the Fifty Thousand ($50,000.00).

5. Employer and Employee agree that this addendum will become null and void along with the Employment Contract dated November 10, 2016 when an operating agreement is executed in the future between Employer and Employee for the pressure washing/painting division.

Employer and Employee executed both the employment contract and the addendum (2016 Addendum) on November 10, 2016. The employment contract set Employee's regular annual salary at $90,000.

On March 3, 2017, the parties executed a second addendum to the employment contract (2017 Addendum) to recharacterize the $50,000 payment to Employee as consideration for "the good will and client list of Employee's former company."[1] Errico identified the 2017 Addendum as "the addendum for the accountants," explaining that Employer's accounting department instructed Errico to re-categorize the payment. In May 2017, Employer, through Employee's immediate supervisor, terminated Employee for poor performance, and Errico asked Employee to repay the $50,000. A few days later, Employee requested Errico to re-hire him, but Errico believed that Employee's position was "bleeding money" and, thus, Employer could not afford to continue paying Employee a $90,000 salary. Therefore, the two verbally agreed on a reduced salary of $45,000, plus performance incentives, for Employee.

In late September 2017 or early October 2017, Errico became concerned about Employee's conduct at a meeting between Employee and representatives of a resort management business, Brittain Resort Management (Brittain), whom Employer had been courting as a potential customer for several months. According to Errico, Brittain's representatives initially declined to enter into a contract for Employer's services because they "did not understand the relationship . . . between [Employee]

---

[1] According to Employee's co-worker, Gregg Evans, Employee never provided a client list to Employer.

and [Employer]."  Errico testified, "They relayed to us that [Employee] had approached them and told them that [Employer] was not capable of doing this contract and that [Employee] was trying to take the business."  Employee resigned from Employer on or about October 2, 2017.

Several days later, Employer filed the present action against Employee, invoking the non-compete provisions of their contract and seeking the following relief: a judgment declaring the employment contract to be enforceable against Employee and damages for (1) breach of contract, (2) anticipatory breach of contract, (3) slander per se, and (4) intentional interference with prospective contractual relations.  Employer also sought attorney's fees and an order enjoining Employee from competing with Employer, soliciting Employer's clients, or defaming Employer.  Employer filed a separate motion for a temporary restraining order and a temporary injunction, and the circuit court granted both motions, prohibiting Employee from competing with Employer, soliciting existing or potential customers of Employer, or appropriating any intellectual property of Employer.  Although Employee filed certain counterclaims against Employer, he later abandoned them.

After the case was referred to the Master-in-Equity, he issued an order dissolving the temporary injunction due to the expiration of the two-year period specified in the non-compete provisions of the parties' contract.  The master then conducted a non-jury trial, at which Errico testified that he was willing to waive consequential damages and seek only the return of the $50,000 payment, plus attorney's fees.  After trial, the master issued a written order denying the requested relief.  This appeal followed.

Following oral arguments, this court dismissed Employer's appeal for lack of appellate jurisdiction based on our then-current understanding of the South Carolina Appellate Court Rules.  Since then, the supreme court reversed this court's dismissal of the appeal, holding that automatic service of the Notice of Electronic Filing (NEF) upon the E-Filing of a notice of appeal constitutes proper service of the notice of appeal as to parties who are represented by counsel and proceeding in the E-Filing System. *See CRM of the Carolinas, LLC v. Trevor W. Steel*, Op. No. 2024-MO-011 (S.C. Sup. Ct. filed April 24, 2024).  It is undisputed that upon Employer's filing of the notice of appeal with the Georgetown Clerk of Court, the Clerk indicated that opposing counsel had been served electronically.  Consequently, our supreme court remanded the case to this court to address the appeal's merits. *Id.*

**ISSUES ON APPEAL**

1. Did Employer fail to preserve its issues on appeal?

2. Did the evidence support the master's finding that Employer was not entitled to a return of its $50,000 payment to Employee?

3. Did the master err by denying Employer's request for attorney's fees?

## STANDARD OF REVIEW

"An action to construe a contract is an action at law reviewable under an 'any evidence' standard." *W. Anderson Water Dist. v. City of Anderson*, 417 S.C. 496, 502, 790 S.E.2d 204, 207 (Ct. App. 2016) (quoting *Pruitt v. S.C. Med. Malpractice Liab. Joint Underwriting Ass'n*, 343 S.C. 335, 339, 540 S.E.2d 843, 845 (2001)). "In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence [that] reasonably supports the judge's findings." *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976), *abrogated on other grounds by Matter of Est. of Kay*, 423 S.C. 476, 816 S.E.2d 542 (2018). Questions of law, however, are reviewed de novo. *Callawassie Island Members Club, Inc. v. Dennis*, 425 S.C. 193, 198, 821 S.E.2d 667, 669 (2018).

## LAW/ANALYSIS

### I.     Preservation

Employee argues that because Employer neither raised an objection to any evidence at trial nor filed any post-trial motions, Employer did not properly raise to the master the issues now asserted on appeal. We disagree.

Employer's two main issues on appeal are (1) the sufficiency of the evidence to support the master's finding that Employer is not entitled to the return of its $50,000 payment to Employee and (2) Employer's entitlement to attorney's fees. Employer sufficiently raised these issues to the master through its Complaint and during its presentation at trial. *See* Rule 52(b), SCRCP ("When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised *whether or not* the party raising the question has made in the trial court an objection to such findings or has made a motion to amend them or a motion for judgment." (emphasis added)); Note

to Rule 52(b), SCRCP ("The last sentence of Rule 52(b) makes clear that a motion to amend is optional, not a prerequisite to the right to appeal.").

Further, the master adequately ruled on these issues for purposes of their preservation on appeal. In his order, the master stated: "The crux of the controversies between the parties concerns the initial payment of $50,000 [that] arose from the November 10, 2016 employment contract the parties willingly and voluntarily entered into and executed." Additionally, the master found that the parties "altered and amended, through written addend[a], the terms of employment, amount and designation of financial compensation, as well as the job requirements and responsibilities on multiple occasions throughout the lifetime of the business relationship between the parties." The master concluded that Employer "failed to meet the necessary burden of proof to substantiate[] its claims against [Employee]." The only other findings and conclusions were within the master's explanation of his denial of both parties' respective requests for attorney's fees:

> With respect to [Employer's] request for attorney fees, the evidence established *the classification of the payment of funds was changed a number of times by [Employer]; that on one occasion[,] the change conferred an alleged monetary benefit to [Employer].*[2] *Therefore, [Employer] cannot now assert a different setting* and cannot claim attorney fees. The [c]ourt further determined the actions of [Employee] certainly resulted in a justifiable termination of the parties' business relationship. As such, there is no basis for this [c]ourt to award [Employee] attorney fees.

(emphasis added).

Although additional and more cogent findings and conclusions would have been ideal, Employer was not required to file a Rule 59(e), SCRCP, motion to preserve the two main issues it now raises on appeal. It is easy enough to infer from the language in the master's order that he considered Employer's most recent characterization of the $50,000 payment as superseding the requirement for Employee to return the $50,000 (if Employee left Employer before the three-year

---

[2] At trial, Employee's counsel argued that Employer reclassified the $50,000 from initial compensation to goodwill "for tax purposes."

anniversary).  Therefore, a Rule 59(e) motion was unnecessary to obtain rulings clear enough for this court's review.

## II.     Return of Payment

Employer argues the evidence did not support the master's finding that Employer's most recent characterization of the $50,000 payment superseded the requirement for Employee to return the $50,000 (if he left Employer before their three-year anniversary).  We agree.

"When interpreting a contract, a court must ascertain and give effect to the intention of the parties."  *W. Anderson Water Dist.*, 417 S.C. at 503, 790 S.E.2d at 207 (quoting *Laser Supply & Servs., Inc. v. Orchard Park Assocs.*, 382 S.C. 326, 334, 676 S.E.2d 139, 143 (Ct. App. 2009)).  "To determine the intention of the parties, the court 'must first look at the language of the contract . . . .'"  *Id.* (quoting *C.A.N. Enters. v. S.C. Health & Human Servs. Fin. Comm'n*, 296 S.C. 373, 377, 373 S.E.2d 584, 586 (1988)).  "When the language of a contract is clear and unambiguous, the determination of the parties' intent is a question of law for the court."  *Id.*  "Whether an ambiguity exists in the language of a contract is also a question of law."  *Id.*  "A contract is ambiguous when the terms of the contract are reasonably susceptible to more than one interpretation."  *Id.* at 503, 790 S.E.2d at 208 (quoting *S.C. Dep't of Nat. Res. v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 302 (2001)).  "Once the court decides the language is ambiguous, evidence may be admitted to show the intent of the parties."  *Id.* (quoting *S.C. Dep't of Nat. Res.*, 345 S.C. at 623, 550 S.E.2d at 303).  "The determination of the parties' intent is then a question of fact."  *Id.* (quoting *S.C. Dep't of Nat. Res.*, 345 S.C. at 623, 550 S.E.2d at 303).

In our view, there is only one reasonable interpretation of the parties' contract. There is nothing in the 2017 Addendum that supersedes the requirement that Employee return the $50,000 if he leaves Employer before three years.  Both addenda are labeled as such, i.e., "Employment Contract Addendum," rather than as an amendment or novation.  *See Moore v. Weinberg*, 373 S.C. 209, 218, 644 S.E.2d 740, 744 (Ct. App. 2007) ("An addendum that modifies a pre-existing agreement, but does not extinguish it, is not a novation."), *aff'd*, 383 S.C. 583, 681 S.E.2d 875 (2009); *id.* at 217, 644 S.E.2d at 744 ("A novation is an agreement between all parties concerned for the substitution of a new obligation between the parties with the intent to extinguish the old obligation." (quoting *Wayne Dalton Corp. v. Acme Doors, Inc.*, 302 S.C. 93, 96, 394 S.E.2d 5, 7 (Ct. App. 1990))); ADDENDUM, Black's Law Dictionary (11th ed. 2019) ("Something to be added, usu. to a document; esp., a

supplement to a speech, book, contract, or other document to alter its contents or give more information.").  Further, the 2017 Addendum states merely that the characterization of Employer's $50,000 payment as "initial compensation" was incorrect.  Moreover, both addenda state from the outset that they "supplement[] and [are] made a part of the Employment Contract."

We acknowledge that, at first glance, the provision in the November 2016 Addendum stating that the "initial compensation" will be "earned" after three years may seem binding such that recharacterizing the $50,000 as payment for an asset (such as goodwill) would relieve Employee of the obligation to "earn" that payment.  However, the addition to the 2017 Addendum of language entitling Employee to keep his "former company name and client list" upon his termination supports the parties' continued expectation that Employee would return the $50,000 if he left before three years.  This new provision would restore both parties to their pre-contract status in the event of Employee's premature termination because the goodwill that accompanied the "Clean Image" name would be returned to Employee.  The provision makes both parties whole in the event of Employee's termination just as the former arrangement (Employee "earning" the "initial compensation" after three years) would have made both parties whole.  The master overlooked this.

Assuming, arguendo, there is more than one reasonable interpretation of the parties' contract, the evidence submitted at trial shows the parties intended for Employee to repay the $50,000, regardless of its character, if Employee left Employer before the expiration of three years.  Errico testified that Employer had never before paid that much money to recruit an employee and that he did not view the recharacterization of the $50,000 payment as affecting Employee's obligation to repay the money if his employment terminated before the expiration of three years.  Errico did not consider the 2017 Addendum as superseding the 2016 Addendum or the repayment requirement.  He testified that he always intended for Employee to be required to repay the $50,000 if he did not work for Employer for three years.

This viewpoint is consistent with the provision in the 2017 Addendum allowing Employee "to keep his former company name and client list" should Employee leave Employer.  In other words, both addenda, combined, show the parties' ultimate intent to restore their previous status should the employment terminate before the expiration of three years, regardless of the characterization of the $50,000.  Additionally, when confronted with the language of the parties' written contract, Employee ultimately acknowledged the requirement that he return the $50,000 payment if he left Employer before the expiration of three years.  The master overlooked this testimony.

We also acknowledge that when Employer re-hired Employee after firing him in May 2017, the two verbally agreed on a reduced salary of $45,000, plus performance incentives, for Employee.  However, the only evidence bearing on whether the parties intended for this new, verbal agreement to supersede the original contract is the original contract's provision regarding amendments:  "Any Amendment of this Agreement must be mutually agreed upon in writing by both parties (the Employer and Employee). Furthermore, any amendment must also contain a start date for the amendment to the original Employment Contract." Moreover, "there can be no novation unless both parties so intend." *Moore*, 373 S.C. at 218, 644 S.E.2d at 744.  There was no evidence presented to show that either Employer or Employee intended to substitute any terms for the original contract except Employee's salary.  In fact, the parties' original contract recognized only those amendments that were in writing.  Therefore, the verbal agreement to reduce Employee's salary was unenforceable.

Based on the foregoing, the evidence does not reasonably support the master's finding that Employer's most recent characterization of the $50,000 payment superseded the repayment requirement.  *See Townes Assocs.*, 266 S.C. at 86, 221 S.E.2d at 775 ("In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence [that] *reasonably supports* the judge's findings." (emphasis added)).  The evidence shows that the parties merely changed the characterization of the $50,000 payment, accompanied that recharacterization with the promised return of the Clean Image name and client list, and acted on an unenforceable verbal agreement to reduce Employee's salary.  Therefore, we reverse the master's ruling on this issue.

## III.   Attorney's Fees

Employer also argues that the master erred by denying its request for attorney's fees because Employer should have been the prevailing party.  In light of our disposition on the merits of this action, we remand the issue of attorney's fees to the master for his reconsideration.

## CONCLUSION

Accordingly, we reverse the master's ruling on the merits and remand to the master the question of Employer's entitlement to attorney's fees.

**REVERSED AND REMANDED.**

**WILLIAMS, C.J., and GEATHERS and VERDIN, JJ., concur.**