PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

MARY L. ROWZIE; LOWELL R.
CARAWAY, on behalf of themselves
and all others similarly situated,

　　　　*Plaintiffs-Appellants,*

　　　　　v.

ALLSTATE INSURANCE COMPANY,

　　　　*Defendant-Appellee.*

No. 07-2159

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(2:07-cv-00049-DCN)

Argued: December 3, 2008

Decided: February 12, 2009

Before NIEMEYER and MICHAEL, Circuit Judges, and
Rebecca Beach SMITH, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Smith wrote the opinion, in which Judge Niemeyer and Judge Michael joined.

## COUNSEL

**ARGUED:** George J. Kefalos, Charleston, South Carolina, for Appellants. Peter James Valeta, MECKLER, BULGER

AND TILSON, Chicago, Illinois, for Appellee. **ON BRIEF:** T. Christopher Tuck, RICHARDSON, PATRICK, WEST-BROOK & BRICKMAN, L.L.C., Mt. Pleasant, South Carolina, for Appellants. M. Scott Taylor, Florence, South Carolina; John S. Wilkerson, III, Charleston, South Carolina, for Appellee.

## OPINION

SMITH, District Judge:

Insurance policy holders Mary Rowzie and Lowell Caraway filed suit against their insurer, Allstate, alleging that Allstate's policy of offsetting payments of underinsured motorist benefits by amounts paid for medical benefits violates two separate South Carolina statutes. The district court granted summary judgment in favor of Allstate, and this appeal followed. Because we find the district court's interpretation of South Carolina law to be correct, we affirm.

I.

Plaintiffs Mary Rowzie and Lowell Caraway are Allstate insureds who carry, within their automobile insurance policies, underinsured motorist ("UIM") and medical payments ("PIP/MedPay")[1] coverages. After separate automobile accidents with underinsured motorists, they received benefit payments from the PIP/MedPay coverages of their respective policies. When Plaintiffs then sought to recover UIM benefits, Allstate claimed that, pursuant to the express language of Plaintiffs' insurance policies, it was entitled to reduce the

---

[1]Medical payments coverage is also termed personal injury protection, or "PIP," coverage. "PIP" is used throughout the district court's opinion, as well as in the South Carolina Code sections at issue. Because Allstate's policy language refers to medical expense benefits coverage as "MedPay," we will use a combination of both terms.

amount payable as UIM benefits by the amounts previously paid as PIP/MedPay benefits. Plaintiffs disputed this assertion, claiming that the clear language of South Carolina Code §§ 38-77-144 and 38-77-160 prohibits an insurer from reducing UIM benefits based on the amount disbursed as medical payment benefits.

The Allstate policy provision at issue states that:

> Subject to the above limits of liability, [UIM] damages payable will be reduced by . . . all amounts payable under any workers' compensation law, disability benefits law, or similar law, *Medical Expense Benefits Coverage of this policy*, or any similar automobile medical payments coverage.

(J.A. 59 (emphasis added).) In order to understand the operation of this provision, and because neither party has provided any factual backdrop for the case, a hypothetical—similar to the one employed by the district court in its Opinion and Order granting Allstate's motion for summary judgment—is helpful. Assume John Doe, an automobile insured whose policy from Allstate includes both PIP/MedPay and UIM coverage, is involved in an accident with an underinsured driver who carries only the minimum insurance amount of $25,000. The accident results in a $100,000 loss to John Doe, only $25,000 of which is paid by the at-fault driver's insurance company. Allstate first pays Doe's $10,000 worth of medical bills from his PIP/MedPay coverage. Then, because Allstate paid these PIP/MedPay benefits, it only pays $65,000 for Doe's UIM coverage, rather than the full $75,000 left uncovered by the at-fault driver's insurance. Plaintiffs contend that South Carolina law prohibits offsetting the UIM benefits by the PIP/MedPay benefits in this way and, thus, that Allstate should pay Doe $75,000 in UIM coverage, in addition to the $10,000 in PIP/MedPay benefits, resulting in a total benefits payment of $85,000 for the two types of coverage combined.

Plaintiffs, on behalf of themselves and all others similarly situated, brought suit against Allstate, claiming that the policy provision violates South Carolina law by reducing the amount due to them under UIM coverage by the amount paid from their PIP/MedPay benefits. On March 23, 2007, Allstate filed a motion for summary judgment and, on April 12, 2007, Plaintiffs filed a cross-motion for summary judgment or, alternatively, for certification of the question to the South Carolina Supreme Court.

After conducting a hearing on the cross-motions, the district judge issued an Order and Opinion on October 11, 2007, granting summary judgment in favor of Allstate. The district court found that Allstate's policy did not violate either § 38-77-144 or § 38-77-160. As the law surrounding the issue was clear, the court declined to analyze the parties' public policy arguments. The district court also held that South Carolina law is "not so unclear in this area as to require the submission of a certified question." (J.A. 215.) As such, Plaintiffs' alternative motion to certify a question of law to the South Carolina Supreme Court was denied.[2]

## II.

We review de novo a district court's grant of summary judgment, viewing the facts and inferences drawn from them in the light most favorable to the non-moving party.[3] *See Blaustein & Reich, Inc. v. Buckles*, 365 F.3d 281, 286 (4th Cir. 2004). We review any conclusions of law, including questions of statutory interpretation, de novo. *Id.*

---

[2]By order dated February 4, 2008, a panel of this court denied plaintiffs' motion to place this case in abeyance pending referral of a certified question to the South Carolina Supreme Court.

[3]The facts are not in dispute. As outlined above, the district court, noting that the parties had not provided detailed facts surrounding Plaintiffs' dealings with Allstate, constructed a hypothetical scenario to illustrate how the coverage worked.

III.

A.

Plaintiffs first allege that the Allstate policy provision is prohibited by South Carolina Code § 38-77-144, which provides:

> *Personal injury protection (PIP) coverage not mandated.* There is no personal injury protection (PIP) coverage mandated under the automobile insurance laws of this State. . . . If an insurer sells no-fault insurance coverage which provides personal injury protection, medical payment coverage, or economic loss coverage, the coverage shall not be assigned or subrogated and is not subject to a setoff.

S.C. Code Ann. § 38-77-144.

The South Carolina Supreme Court analyzed the background and purpose of this section in *State Farm Mut. Auto. Ins. Co. v. Richardson*, 313 S.C. 58, 60 (1993). Prior to South Carolina's comprehensive automotive insurance reform legislation in 1989, a tortfeasor was able to reduce his liability to a claimant by the amount of PIP/MedPay benefits received by the claimant. This liability reduction, termed a "set-off," was eliminated during the 1989 reform legislation with the provision cited above.[4] The court in *Richardson* interpreted this provision "to apply only to the tortfeasor," and not to serve as a general prohibition against all reductions of automotive insurance based upon PIP/MedPay coverage. *Richardson*, 313 S.C. at 61 (holding that the insurance policy at issue in that case did not violate this section because it was not a set-off used to reduce a tortfeasor's liability).

---

[4]The provision was originally enacted as § 38-77-145, which contained identical wording as the section here discussed and currently in effect.

The district court, following the reasoning in *Richardson*, held that Allstate's policy does not violate § 38-77-144 because the set-off does not reduce a tortfeasor's liability but, rather, reduces the amount of benefits Allstate pays on other types of coverage by the amount it pays in PIP/MedPay benefits. Further, the district court reasoned that, because UIM coverage is optional in South Carolina, "there is no prohibition on an insurer's ability to reduce the amount paid by reference to the insured's PIP coverage." (J.A. 213.) Moreover, South Carolina law does not specifically prohibit UIM set-offs, and the state's courts have expressly permitted insurers to offset UIM benefits based on worker's compensation benefits. *See State Farm Mut. Auto. Ins. Co. v. Calcutt*, 340 S.C. 231 (2000) (neither public policy nor South Carolina law prohibits such a set-off); *Williamson v. United States Fire Ins. Co.*, 314 S.C. 215 (1994) (reasoning that a set-off was permissible because, among other reasons, the employer was not statutorily required to carry a certain amount of UIM coverage). Because UIM coverage is not mandatory, and since the set-off based on PIP/MedPay benefits is not contrary to § 38-77-144, the district court concluded that it "must give effect to the terms of the policy." (J.A. 213.)

As referenced above, the court in *Calcutt* considered an insurance policy provision very similar to the Allstate provision at issue here, also reducing UIM benefits payable by amounts received as workers' compensation benefits. Because the UIM coverage was voluntarily provided, and since employers "should not be subject to duplicative recoveries by their employees" when voluntarily providing UIM coverage, the court held that the policy did not conflict with South Carolina law or the public policy of the state. *Calcutt*, 340 S.C. at 236. Although the current dispute deals with set-offs based on PIP/MedPay, not workers' compensation, similar reasoning applies.[5]

---

[5]In addition to reducing UIM benefits based on PIP/MedPay benefits, the Allstate policy provision at issue also reduces UIM coverage by the amount payable under "any workers' compensation law." (J.A. 59.) This provision closely mirrors the provision discussed in *Calcutt*.

The linchpin of Plaintiffs' argument is that a "fundamental tenet" of automobile insurance law requires UIM carriers, such as Allstate, to "step into the shoes" of the at-fault driver in determining benefits owed under an insurance policy. (Appellants' Br. 8.) Relying on the language in *Richardson*, 313 S.C. at 60, that a tortfeasor may not reduce his liability to an injured party by the amount of PIP/MedPay benefits received from the injured's insurer, Plaintiffs reason that their UIM recovery from Allstate should not be reduced by the PIP/MedPay benefits they received. In short, Plaintiffs argue that because Allstate has "step[ped] into the shoes" of the at-fault driver, Allstate may not reduce the UIM benefits payable to Plaintiffs by the PIP/MedPay benefits already disbursed. Plaintiffs' argument overlooks the specific finding in *Richardson* that the set-off prohibition applies "only to the tortfeasor." *Id.* at 61.

Moreover, subsequent to the decision in *Richardson*, the South Carolina Supreme Court further ruled that, "[a]lthough the UIM carrier 'steps into the shoes' of the underinsured motorist, it has rights separate and distinct from those of the underinsured motorist." *Broome v. Watts*, 319 S.C. 337, 340 (1995); *see also Ex Parte Allstate Ins. Co.*, 339 S.C. 202, 206 (Ct. App. 2002) (noting that UIM carriers have a limited right to defend a tortfeasor in certain cases, but that the insurer has legal rights distinct and separate from those of the tortfeasor). Reasoning from this proposition, the district court specifically found that a UIM carrier "does *not* stand in the shoes of the tortfeasor in UIM cases," and, therefore, the statutory provision at issue, § 38-77-144, is inapplicable to Allstate. (J.A. 212 (emphasis added).)

As the court in *Richardson* made clear, the South Carolina legislature drafted § 38-77-144 with the intention that the set-off prohibition would "apply only to the tortfeasor." 313 S.C. at 61. Further, as the court in *Broome* clarified, the UIM insurer "has rights separate and distinct" from the tortfeasor. 319 S.C. at 340. We agree with the district court that Allstate,

as an UIM carrier, is not the legal equivalent of the at-fault, underinsured driver in each of Plaintiffs' accidents and, thus, § 38-77-144 does not apply to Allstate. Accordingly, the district court did not err in granting summary judgment on this claim.

B.

Plaintiffs next contend that the Allstate policy provision is prohibited by South Carolina Code § 38-77-160. That statute provides, in pertinent part:

> *Additional uninsured motorist coverage; underinsured motorist coverage.* . . . Such carriers shall also offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability covereage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist or in excess of any damages cap or limitation imposed by statute. . . . Benefits paid pursuant to this section are not subject to subrogation and assignment.

S.C. Code Ann. § 38-77-160. The district court held that the Allstate policy did not violate this provision because there is no "subrogation" or "assignment," within the meaning of those terms. Subrogation is the substitution of one person in place of another with reference to a lawful claim or right. *See Kuznik v. Bees Ferry Assocs.*, 342 S.C. 579, 608 (Ct. App. 2000). South Carolina law defines an assignment as "the act of transferring to another all or part of one's property, interest, or rights." *Moore v. Weinberg*, 373 S.C. 209, 219 (Ct. App. 2007) (internal citation omitted). Both subrogation and assignment, then, imply that Plaintiffs have transferred or otherwise lost some right they had. It is undisputed that Plaintiffs were paid the amount to which they were entitled under their

PIP/MedPay coverage. Any subrogation or assignment, therefore, must be of Plaintiffs' UIM coverage.

Under South Carolina law, UIM coverage is not mandatory and must be paid only up to the amount of damages incurred by the injured driver. *See Broome*, 319 S.C. at 341 (noting that the injured motorist's total recovery is "not to exceed the damages sustained")(internal quotation omitted). The district court reasoned that, because Plaintiffs received UIM benefits up to a level that—when combined with their PIP/MedPay benefits—compensated them for their entire loss, they received all of the "rights" to coverage to which they were entitled, both under the terms of Allstate's policy and under South Carolina law. The district court, therefore, concluded that Allstate's policy does not create a subrogation or assignment of Plaintiffs' UIM benefits, and does not violate § 38-77-160. We agree with the district court.

At the core of Plaintiffs' argument that Allstate's policy does constitute a prohibited assignment or subrogation of UIM benefits under § 38-77-160, is their contention, as discussed above, that Allstate steps into the shoes of the tortfeasor for insurance purposes and is liable to the same extent as the at-fault driver in a car collision. Since a tortfeasor could not reduce his obligation by the PIP/MedPay benefits received from the injured's insurance carrier, Plaintiffs contend neither should Allstate be able to do so. Additionally, Plaintiffs argue that public policy favors their reading of the two statutes at issue: because Plaintiffs paid separate premiums for PIP/MedPay and UIM coverages, they should be entitled to the full amount of benefits under each type of coverage purchased. To allow otherwise, Plaintiffs argue, would give a "windfall recovery" to Allstate. (Appellants' Br. 6.)[6]

[6]As noted above, since South Carolina law provided sufficient guidance to apply the statutes at issue in this case, the district court found it unnecessary to consider the parties' public policy arguments.

To the extent Plaintiffs assert that the PIP/MedPay and UIM coverages they received from Allstate are based in separate, distinct contracts not appropriate for assignment or subrogation, their argument fails. Plaintiffs have one insurance policy contract in which UIM and PIP/MedPay coverages are separate provisions and, by the terms of which, Allstate will reduce the UIM benefits paid by the PIP/MedPay benefits paid. There is simply no assignment or subrogation of any right to UIM benefits under the terms of the Allstate contract.

Further, the central purpose of the UIM statute is to provide coverage where the injured party's damages exceed the liability limits of the at-fault motorist. *See Floyd v. Nationwide Mut. Ins. Co.*, 367 S.C. 253 (2005); *Cobb v. Benjamin*, 325 S.C. 573, 588 (Ct. App. 1997). In this case, Plaintiffs received all of the PIP/MedPay benefits to which they were entitled, as well as an additional sum of UIM benefits to fully compensate them for their losses. Allowing Plaintiffs to recover UIM benefits totaling the entire amount left uncompensated by the at-fault motorist, without any deduction of PIP/MedPay benefits already paid, would require Allstate to doubly compensate their insureds for medical damages sustained in accidents with underinsured motorists and would, in effect, give a "windfall recovery" to Plaintiffs. As an injured insured may not recover more than the total damages she sustained, *Broome*, 319 S.C. at 342, the district court was correct in granting summary judgment on this claim.

IV.

For the foregoing reasons, we hold that the Allstate policy section at issue, which provides for a reduction of underinsured motorist damages payable by amounts paid as PIP/MedPay benefits, does not violate either South Carolina Code § 38-77-144 or § 38-77-160. Thus, we affirm the judgment of the district court in favor of Allstate.

*AFFIRMED*