<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 10-1053**

———————

CHARLES EDWARD RICHTER,

        Plaintiff - Appellant,

    v.

J. BEATTY, Deputy Sheriff Queen Anne's County,

        Defendant – Appellee,

    and

STATE OF MARYLAND; CHARLES F. CROSSLY, JR.,

        Defendants.

———————

Appeal from the United States District Court for the District of Maryland, at Baltimore.   Richard D. Bennett, District Judge. (1:07-cv-02707-RDB)

———————

Submitted:  February 15, 2011       Decided:  March 17, 2011

———————

Before MOTZ, KING, and DUNCAN, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

Robin R. Cockey, COCKEY, BRENNAN & MALONEY, PC, Salisbury, Maryland, for Appellant.   Daniel Karp, KARPINSKI, COLARESI & KARP, Baltimore, Maryland, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Charles Richter appeals the district court's judgment, entered after a jury trial, in favor of James Beatty. Richter claims error in three respects: (1) the district court erred in granting summary judgment on his procedural due process claim; (2) the court erred in granting summary judgment on his substantive due process claim; and (3) the court erred in revisiting the issue of qualified immunity after the close of his case-in-chief. For the reasons that follow, we affirm.

On October 8, 2004, Richter, a retired police officer, decorated his 1988 Chevrolet Beretta ("Beretta") with swastikas and the words "Vote for Pipkin." He then parked the car on Pier One Road in Queen Anne's County, Maryland, at a location popular with local politicians for campaigning. The words written on the vehicle referred to state Senator E.J. Pipkin, whom Richter opposed. Richter also taped a letter to then-Maryland Governor Robert Erlich to the inside of the Beretta's window, claiming that the local police force refused to enforce the laws, and that Pipkin had promised him aid and then refused to assist him. The car was legally parked and in operable condition.

Beatty, a Sherriff's deputy, tagged the vehicle with a repair order and noted that it would be towed in forty-eight hours if not moved. Although Richter surreptitiously moved the vehicle during the forty-eight hour period, he always returned

2

it to its original parking space. Ultimately, Beatty had the vehicle towed, and Richter refused to pay the $100 towing fee for the vehicle's return. The Beretta was eventually destroyed and the underlying suit followed. Richter alleged violations of his First Amendment rights, his substantive and procedural due process rights, and sought injunctive relief and punitive damages. The district court granted summary judgment in favor of Beatty on Richter's due process claims, but concluded that Beatty was not entitled to good faith qualified immunity on Richter's First Amendment retaliation claim, and denied summary judgment. The case proceeded to trial.

At trial, Richter chose only to call two witnesses during his case-in-chief: himself and Beatty (who was only called to authenticate certain documents). Richter's decision was purportedly a strategic one: he and his attorney believed that it would not be advantageous to call hostile witnesses during the case-in-chief, and chose instead to develop their case through cross-examination of defense witnesses. After the close of the case-in-chief, Beatty moved for judgment as a matter of law. The district court, after hearing argument,

denied the motion, but chose to revisit the question of qualified immunity.[*]

The court stated that it would allow the case to go to a jury, though, to allow the jury to determine whether Richter had satisfied the factual predicate for his claim. If the jury ruled in Richter's favor, the court would then determine, as a matter of law, that Beatty was entitled to qualified immunity and would strike the jury's verdict. Richter objected to the court's approach, arguing that disclosing how the court would rule post-verdict would alter Beatty's manner of presentation of evidence, and possibly deprive Richter of the chance to cross-examine defense witnesses and develop his case. Beatty elected not to present any evidence, and the jury ruled in his favor. This timely appeal followed.

## I. Procedural Due Process

Richter first claims that the district court erred in concluding that his procedural due process rights were satisfied. The gravamen of his claim is that by towing and destroying his Beretta, he was deprived of a property interest

---

[*] During the summary judgment stage, this case was presided over by then-District Judge André Davis. When Judge Davis was elevated to this court, he was replaced on this case by Judge Richard D. Bennett, who presided over the trial.

4

without either a pre-deprivation or a post-deprivation remedy that would satisfy Fourteenth Amendment scrutiny.

This court reviews de novo a district court's order granting summary judgment and views the facts in the light most favorable to the nonmoving party. Rowzie v. Allstate Ins. Co., 556 F.3d 165, 167 (4th Cir. 2009). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Summary judgment will be granted unless "a reasonable jury could return a verdict for the nonmoving party" on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To establish a violation of procedural due process, Richter must show that (1) he had a property interest (2) of which the defendant deprived him, (3) without due process of law. Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach, 420 F.3d 322, 328 (4th Cir. 2005) (citing Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 826 (4th Cir. 1995)). Procedural due process requires, at a minimum, fair notice and an opportunity to be heard. Mathews v. Eldridge, 424 U.S. 319, 333 (1976). In order to determine whether an individual has received fair notice, we "must examine the relevant facts of each case." United States v. Hoechst Celanese Corp., 128 F.3d 216, 224 (4th Cir. 1997). Beyond the minimum requirements of

5

notice and an opportunity to be heard, due process is "flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

Here, it is clear that Richter had a property interest in his vehicle. Although the district court assumed that Beatty had deprived Richter of his interest in the vehicle, Beatty argues on appeal that there is no evidence that Beatty ordered the car towed or destroyed. Because Richter has not shown that he was deprived of due process, we do not reach the issue of whether Beatty was responsible for the towing and subsequent destruction of the Beretta.

After review of the record, we conclude that Richter was not deprived of procedural due process. Indeed, Richter could have availed himself of the court system to prevent the destruction of the Beretta. Moreover, he could have simply paid the fine and then challenged the fine's validity. Finally, it appears from the record that police officers attempted to return the Beretta to Richter or waive the towing fee, and Richter refused, asserting that he was entitled to a day in court. In light of this record, we cannot conclude that Richter was denied procedural due process.

## II.  Substantive Due Process

The government runs afoul of substantive due process only when its actions shock the conscience.  <u>Cnty. of Sacramento v. Lewis</u>, 523 U.S. 833, 845-47 (1998); <u>Young v. City of Mount Ranier</u>, 238 F.3d 567, 574 (4th Cir. 2001).  In other words, the protections of substantive due process extend only to "state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any predeprivation procedural protections or of adequate rectification by any post-deprivation state remedies."  <u>Rucker v. Harford Cnty.</u>, 946 F.2d 278, 281 (4th Cir. 1991).  To shock the conscience, "the conduct must be 'intended to injure in some way unjustifiable by any government interest.'"  <u>Hawkins v. Freeman</u>, 195 F.3d 732, 742 (4th Cir. 1999) (en banc) (quoting <u>Lewis</u>, 523 U.S. at 849).

We have reviewed the record, and we agree with the district court's conclusion that Beatty's actions did not violate Richter's substantive due process rights.  First, Richter had post-deprivation procedures available to remedy the towing of his vehicle.  Accordingly, the actions were not "literally incapable of . . . adequate rectification by any post-deprivation state remedies."  <u>Rucker</u>, 946 F.2d at 281.  Moreover, the towing of Richter's Beretta was simply not so unjust that no amount of fair procedure could rectify it.  We

7

therefore decline to disturb the district court's grant of summary judgment on Richter's substantive due process claims.

## III. Unfair Prejudice at Trial

Finally, Richter argues that the district court unfairly prejudiced him by readdressing the issue of qualified immunity at trial. In so doing, Richter argues, the district court altered the manner in which Beatty would present evidence and prevented him from developing his case by way of cross-examining Beatty's witnesses. Richter does not appear to dispute the district court's legal conclusions with respect to Beatty's qualified immunity claim; merely the timing of the court's decision to announce that Beatty would receive the benefit of qualified immunity.

We agree with the parties that the appropriate level of review is for abuse of discretion. We conclude, however, that the district court did not abuse its discretion in revisiting the question of qualified immunity. First, the court noted that since the summary judgment phase, there had been a change in the law that arguably affected whether good faith qualified immunity was applicable. See Pearson v. Callahan, 129 S. Ct. 808 (2009). Regarding the timing of the decision, our review of the record reveals no abuse of discretion.

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>