**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1513**

In Re:  PEANUT CROP INSURANCE LITIGATION, MDL-1634.

------------------------------------------

PEANUT FARMERS,

Plaintiff - Appellant,

v.

WILLIAM J. MURPHY, Administrator, Risk Management Agency,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville.  Malcolm J. Howard, Senior District Judge.  (4:05-cv-00008-H)

Submitted:  April 7, 2011                     Decided:  April 13, 2011

Before WILKINSON, KING, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

R. Daniel Boyce, BOYCE & ISLEY, PLLC, Raleigh, North Carolina, for Appellant.  George E. B. Holding, United States Attorney, Eric D. Goulian, R. A. Renfer, Jr., Assistant United States Attorneys, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellants (the "Peanut Farmers") appeal the district court's order granting summary judgment to the Government and dismissing the Peanut Farmers' breach of contract and due process claims. Finding no error, we affirm.

The Peanut Farmers' crops were, at times relevant to this appeal, reinsured by the Federal Crop Insurance Corporation ("FCIC"), which is in turn administered by the U.S. Department of Agriculture's ("USDA") Risk Management Agency ("RMA"). The Peanut Farmers each purchased a Multiple Peril Crop Insurance ("MCPI") policy for their peanut crops for the 2002 crop year. The Appellees in this case include the Secretary of Agriculture and the administrator of the RMA, but will be collectively referred to as "the Government."

Prior to 2002, statutes authorized the Secretary of Agriculture to set quotas on the amount of peanuts that could be marketed as food in the United States. Shares of the annual national quota were allocated to specific farms on the basis of their past production history. 7 U.S.C. § 1358-1 (2000) (repealed 2002). Holders of rights under the quotas derived significant benefits from the ability to sell peanuts in the domestic market as food, thus commanding the higher price dictated by the value of food-use peanuts. "Non-quota" peanuts, by contrast, commanded a lower market price because their end-

2

use (conversion to meal or peanut oil) value was significantly lower than that of food-use peanuts.

The difference in value of "quota" and "non-quota" peanuts was reflected in the amount that each type of peanut loss was indemnified under the MCPI policy. During the crop years immediately preceding 2002, the loss of quota peanuts was indemnified at a rate of 31 cents per pound, while non-quota peanuts losses were indemnified at a rate of 16 cents per pound. The rate at which the Government was to pay under an MCPI policy depended on the allocation of quota to the insured farm. We previously summarized the formula in part as follows:

> If an insured farm has not been allocated an effective poundage marketing quota, . . . the entire production would be insured at the non-quota rate. Thus, when an annual farm poundage quota allocation for an insured farm is "zero," none of that farm's peanut production is insured at the quota rate. . . . After determining the amount of insured quota and non-quota peanuts, those amounts are multiplied by their respective price elections.

In re Peanut Crop Ins. Litg., 524 F.3d 458, 465 (4th Cir. 2008).

In late 2001 and early 2002, the USDA announced its peanut quotas for the 2002 crop year. The USDA also informed holders of quota rights that pending legislation might alter or rescind the peanut quota program. In early 2002, the President signed into law the Farm Security and Rural Investment Act of 2002, Pub.L. No. 107-171, §§ 1301-1310, 116 Stat. 134, 166-83 (2002) (the "2002 Farm Bill"). In relevant part, the 2002 Farm

3

Bill repealed the peanut quota system, replaced it with other price support measures, and mandated that the amount used to calculate indemnity for non-quota peanut losses under the 2002 MCPI policy would increase from 16 cents per pound to 17.75 cents per pound. 2002 Farm Bill § 1310(c). After crop losses in 2002, the Peanut Farmers sought indemnification and were indemnified at the 17.75 cent rate pursuant to the 2002 Farm Bill.

The Peanut Farmers instituted a series of lawsuits that challenged the outcome of their indemnification requests. Ultimately, several class actions against the Government were consolidated in the district court for pretrial proceedings. The court granted summary judgment in favor of the Peanut Farmers on their breach of contract claims, and the Government appealed. Barnhill v. Davidson, No. 4:02-cv-00159-H (E.D.N.C. July 22, 2004). On appeal, we concluded that the court erred, vacated its judgment, and remanded for disposition of the Peanut Farmers' remaining claims. In re Peanut Crop Ins. Litig., 524 F.3d at 458. On remand, the district court granted summary judgment in favor of the Government on the Peanut Farmers' due process claims. The Peanut Farmers noted a timely appeal.

We review de novo a district court's order granting summary judgment and view the facts in the light most favorable to the nonmoving party. Rowzie v. Allstate Ins. Co., 556 F.3d

4

165, 167 (4th Cir. 2009). Summary judgment is appropriate when no genuine issue of material fact exists and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment will be granted unless "a reasonable jury could return a verdict for the nonmoving party" on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

While the Peanut Farmers raise several claims of error, they are, at bottom, a reiteration of the same basic argument: they allege that they were entitled to certain benefits under the MCPI policy and that the Government deprived them of those benefits without due process of law.[*] Our review of those claims leads us to conclude that they all rest on premises that we rejected in our first review of this case.

First, the Peanut Farmers assert that they were entitled to the benefit of the 31 cent indemnity rate and they were deprived of that right when the 2002 Farm Bill was enacted. They refer to this as a "contract right" and note that they

---

[*] The Peanut Farmers additionally claim that they were subject to an unlawful taking without compensation in violation of the Fifth Amendment. This argument was not raised in the complaint, and was not brought before the district court until the Peanut Farmers' response to the Government's motion for summary judgment after remand, seven years after the complaint was filed. Because the argument was not presented before the district court in a timely manner, we do not consider it.

5

relied on the benefits conferred by the MCPI policies. This court, however, has rejected that argument. We concluded that the 31 cent rate was not guaranteed by the MCPI policy and that the 2002 Farm Bill did not actually adversely amend the MCPI policies. Accordingly, the Peanut Farmers' arguments that they were subject to an adverse retroactive legislative action and deprived of a contract right without due process are unavailing.

In addition, the Peanut Farmers claim that they relied on the 31 cent rate, and that because of their reliance, the 2002 Farm Bill was arbitrary and they should be entitled to the difference in rates. Again, though, we concluded that, at least with respect to the Peanut Farmers' theory of reasonable reliance in the contract context, any actual reliance they have shown was not reasonable. In re Peanut Crop Ins. Litig., 524 F.3d at 475-76. The Peanut Farmers were on notice well before they signed the 2002 MCPI policies that the Government might eliminate the quota system altogether. Moreover, as we discussed, there has been "persistent congressional refinement of the peanut quota program," and the Peanut Farmers cannot argue they were taken by surprise by this legislative action. Id. at 476.

We see no reason to conclude that the Peanut Farmers' unreasonable reliance should be accorded more weight in the context of their due process arguments. While we remain

6

sympathetic to the Peanut Farmers' losses, the law of this case is clear that where the Government has provided ample warning of pending legislative changes and where the insured is dealing in an area of heavy, and frequently shifting, government regulation, there is no basis to argue reliance on the pre-existing statutory scheme.

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED