808 S.E.2d 824

Wadette COTHRAN and Chris Cothran, Respondents,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Robert Tucker, Defendants,

Of which State Farm Mutual Automobile Insurance Company is the Appellant.

Appellate Case No. 2016-000177
Opinion No. 5524

Court of Appeals of South Carolina.

Heard September 8, 2017
Filed November 22, 2017
Rehearing Denied January 18, 2018

appellate court need not address remaining issues when disposition of a prior issue is dispositive).

564

Charles R. Norris and Robert W. Whelan, of Nelson Mullins Riley & Scarborough LLP, of Charleston, for Appellant.

Charles Logan Rollins, II, of The Hawkins Law Firm, of Spartanburg, for Respondents.

THOMAS, J.:

Appellant State Farm Mutual Automobile Insurance Company (State Farm) appeals the circuit court's grant of summary judgment to Respondents Wadette and Chris Cothran. The Cothrans brought this action against State Farm alleging breach of an insurance contract and breach of the duty of good faith and fair dealing. State Farm argues the circuit court

erred by granting summary judgment in the Cothrans' favor because our supreme court's precedent was controlling and by holding public policy prohibited insurers offering personal injury protection (PIP) benefits from reducing those benefits by the amount an insured receives from a workers' compensation policy. We reverse.

## FACTS/PROCEDURAL HISTORY

The Cothrans filed this action in April 2015, alleging bad faith refusal to pay insurance benefits and breach of contract. In August 2015, the parties entered a stipulation of facts. Wadette Cothran was injured in a motor vehicle accident and incurred medical expenses in excess of $5,000. Wadette's employer's workers' compensation carrier paid her medical expenses in full. Wadette was also covered by her automobile policy issued by State Farm (the Policy), which provided PIP coverage with a limit of $5,000. State Farm paid $991 to the Cothrans for a portion of Wadette's lost wages but denied payment of the remaining PIP coverage because a provision (Excess Provision) in the Policy provided its PIP coverage was excess to any benefits the policyholder recovered under workers' compensation law. The Cothrans claimed the Excess Provision violated section 38-77-144 of the South Carolina Code (2015)[1] and they should recover the PIP benefits in addition to the workers' compensation benefits. Both parties moved for summary judgment and agreed there were no material facts in dispute. The sole matter before the circuit court was whether the Excess Provision violated section 38-77-144.

The Policy in its entirety is included in the record on appeal and was presented to the circuit court. The Excess Provision stated, "Any [PIP] Coverage provided by [the Policy] applies as excess over any benefits recovered under any workers' compensation law or any other similar law."

State Farm argued our supreme court essentially decided

---

1. *See* § 38-77-144 ("There is no [PIP] coverage mandated under the automobile insurance laws of this State.... If an insurer sells no-fault insurance coverage which provides [PIP], medical payment coverage, or economic loss coverage, the coverage shall not be assigned or subrogated and is not subject to a setoff.").

this issue in *Richardson* [2] by finding section 38-77-144's prohibition against setoffs applied only to a possible setoff for a tortfeasor's liability. It claimed it was entitled to summary judgment because section 38-77-144 did not apply to the situation in this case. Alternatively, the Cothrans argued the plain meaning of section 38-77-144 did not allow a setoff of PIP benefits. They also argued *Richardson* did not address this situation and was only meant to prevent a liability carrier from receiving a windfall. Finally, the Cothrans asserted allowing a setoff of PIP benefits under these circumstances would violate public policy because a workers' compensation carrier would be prevented from claiming an equitable interest in the PIP benefits.

The circuit court granted summary judgment in favor of the Cothrans. The circuit court found the Excess Provision constituted a setoff under South Carolina law. The court then found the Excess Provision violated the plain meaning of section 38-77-144. With regard to *Richardson*, the circuit court determined it "addresse[d] only stacking of coverage," rather than a setoff provision. Further, the circuit court found if State Farm's argument was correct "there would be no bar to the PIP carrier alleging a setoff based on payments made by the health insurance carrier, the liability insurance carrier, or, for that matter, the injured party's Aunt Ethel and Uncle Fred who broke their piggy bank to pay for her hospital bill." The circuit court believed an interpretation permitting such a finding would lead to an "absurd result." Finally, the circuit court declared public policy would not allow a setoff under these circumstances because it would prevent the workers' compensation carrier from claiming an equitable interest in the PIP benefits. Subsequently, the circuit court denied State Farm's motion to reconsider. This appeal followed.

## ISSUES ON APPEAL

1. Did the circuit court err by finding section 38-77-144 invalidates the Excess Provision?

2. Did the circuit court err by finding public policy prohibits a setoff of PIP benefits because it prevents workers'

---

**2.** *State Farm Mut. Auto. Ins. Co. v. Richardson*, 313 S.C. 58, 437 S.E.2d 43 (1993).

compensation carriers from asserting an equitable lien against PIP benefits?

## STANDARD OF REVIEW

■ The circuit court should grant a motion for summary judgment when the evidence shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. An appellate court "reviews the grant of a summary judgment motion under the same standard as the [circuit] court." *Montgomery v. CSX Transp., Inc.*, 376 S.C. 37, 47, 656 S.E.2d 20, 25 (2008). "When the purpose of the underlying dispute is to determine if coverage exists under an insurance policy, the action is one at law." *Nationwide Mut. Ins. Co. v. Rhoden,* 398 S.C. 393, 398, 728 S.E.2d 477, 479 (2012). "[W]hen an appeal involves stipulated or undisputed facts, an appellate court is free to review whether the [circuit] court properly applied the law to those facts." *Id.* at 398, 728 S.E.2d at 480 (quoting *In re Estate of Boynton,* 355 S.C. 299, 301, 584 S.E.2d 154, 155 (Ct. App. 2003)).

## SECTION 38-77-144

State Farm argues the circuit court erred by granting summary judgment in the Cothrans' favor because our supreme court's ruling on section 38-77-144 in *Richardson* was controlling. Specifically, State Farm argues *Richardson* held section 38-77-144's prohibition against a setoff applied only to prevent a tortfeasor from receiving a setoff against an insured's PIP benefits. State Farm claims the circuit court erred by substituting its interpretation of legislative intent for our supreme court's interpretation. Also, State Farm asserts it was entitled to limit its liability by including the Excess Provision in the Policy.

The Cothrans argue the circuit court properly granted summary judgment in their favor based on the plain meaning rule because the text of section 38-77-144 is clear. The Cothrans claim "any policy provision that constitutes a [setoff] [of PIP benefits] must be invalid." The Cothrans contend *Richardson* does not apply to this case and addressed only whether an insurance policy may prohibit stacking of coverages.

 We find the circuit court erred by finding section 38-77-144 invalidated the Excess Provision because the setoff prohibition in section 38-77-144 applies only to prevent tortfeasors from reducing their liability by the amount of PIP benefits recovered by a claimant. "An insurance policy is a contract between the insured and the insurance company, and the policy's terms are to be construed according to the law of contracts." *Williams v. Gov't Emps. Ins. Co. (GEICO)*, 409 S.C. 586, 594, 762 S.E.2d 705, 709 (2014). "As a general rule, insurers have the right to limit their liability and to impose conditions on their obligations provided they are not in contravention of public policy or some statutory inhibition." *Id.* at 598, 762 S.E.2d at 712. Although not absolute, parties to an insurance contract "are generally permitted to contract as they see fit." *Id.* However, "[s]tatutes governing an insurance contract are part of the contract as a matter of law, and to the extent a policy provision conflicts with an applicable statute, the provision is invalid." *Id.* "There is no [PIP] coverage mandated under the automobile insurance laws of this State. . . . If an insurer sells no-fault insurance coverage which provides [PIP], medical payment coverage, or economic loss coverage, the coverage shall not be assigned or subrogated and is not subject to a setoff." S.C. Code Ann. § 38-77-144 (2015).

> The primary rule of statutory construction is to ascertain and give effect to the intent of the General Assembly. In construing statutory language, the statute must be read as a whole, and sections which are a part of the same general statutory law must be construed together and each one given effect. Unless there is something in the statute requiring a different interpretation, the words used in a statute must be given their ordinary meaning. When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning.

*Anderson v. S.C. Election Comm'n*, 397 S.C. 551, 556–57, 725 S.E.2d 704, 706–07 (2012) (citations omitted).

In *Richardson*, our supreme court considered the meaning of a "setoff" as used in section 38-77-144.[3] 313 S.C. at 60–61,

---

**3.** At the time our supreme court decided *Richardson*, section 38-77-144 was numbered section 38-77-145. However, the wording of the current

437 S.E.2d at 45. The insureds incurred medical expenses following a motor vehicle accident, and they filed a claim for PIP benefits under two policies with the same insurer. *Id.* at 59, 437 S.E.2d at 44. The insurer paid the PIP benefits for one policy but denied payment on the other policy based on a policy provision that prevented the insureds from stacking their policies' PIP benefits. *Id.* The insureds brought a declaratory judgment action claiming the insurer's refusal to pay both policies' PIP benefits amounted to a setoff in violation of section 38-77-144. *Id.* The insurer argued the disputed provision was an "anti-stacking" provision, rather than a setoff as that term is used in section 38-77-144. *Id.* at 60, 437 S.E.2d at 44. Our supreme court analyzed the legislative history of section 38-77-144 and agreed with the insurer. *Id.* at 60, 437 S.E.2d at 45. The court noted the statute, prior to 1989, "allowed a tortfeasor to reduce his liability to a claimant by the amount of PIP benefits received by the claimant." *Id.* (citing S.C. Code Ann. § 38-77-290(f) (1989)). The court explained the legislature changed automobile insurance law in 1989, repealed the tortfeasor's statutory setoff, and "expressly provided that PIP coverage was not subject to a [setoff]." *Id.*

Considering this legislative history, the *Richardson* court found the legislature "intended for the [setoff] prohibition in [section 38-77-144] to refer to the statute allowing reduction of a tortfeasor's liability[,] which was repealed" in 1989. *Id.* Thus, our supreme court found the setoff in section 38-77-144 "is the tortfeasor's reduction in liability formerly allowed" by statute. *Id.* The court concluded the legislature "intended the [setoff] prohibition of section 38-77-14[4] to apply *only* to the tortfeasor." *Id.* at 61, 437 S.E.2d at 45 (emphasis added). Thus, although *Richardson* involved an anti-stacking provision, its holding was not limited or restricted only to stacking related provisions.

Additionally, this court has relied on *Richardson* to find section 38-77-144 "prevented [a] tortfeasor from profiting in the case where the injured party received PIP benefits."

---

section 38-77-144 is identical to the statute at the time of *Richardson* except for changing "must" to "shall" in one instance. *Compare* § 38-77-144 (noting PIP coverage "shall" not be assigned), *with* S.C. Code Ann. § 38-77-145 (Supp. 1992) (noting PIP coverage "must" not be assigned).

*Mount v. Sea Pines Co.*, 337 S.C. 355, 358, 523 S.E.2d 464, 465 (Ct. App. 1999) (per curiam). "By enacting section 38-77-14[4], the legislature attempted to insure that the tortfeasor paid the full amount of damages suffered by the injured party." *Id.* Based on these findings, the *Mount* court determined the setoff prohibition in section 38-77-144 did not apply to prevent a tortfeasor from reducing a jury award in the plaintiff's favor by the amount the tortfeasor paid prior to trial toward the plaintiff's medical expenses. *Id.* Although the setoff at issue in *Mount* did not involve PIP benefits, the *Mount* court's interpretation and application of *Richardson* in a situation other than one involving an anti-stacking provision is instructive.

Further, the Fourth Circuit has considered whether the setoff prohibition in section 38-77-144 prohibits an insurer from reducing the amount of underinsured motorist (UIM) benefits by the amount of PIP benefits. *Rowzie v. Allstate Ins. Co.*, 556 F.3d 165, 166 (4th Cir. 2009). In *Rowzie*, the plaintiff was involved in a motor vehicle accident with an underinsured motorist, and she received PIP benefits from her insurer. *Id.* The plaintiff also sought to recover UIM benefits from her insurer, but the insurer, based on express language in the policy, reduced the UIM award by the amount of PIP benefits it paid the plaintiff. *Id.* The plaintiff claimed the setoff prohibition in section 38-77-144 prohibited the insurer from reducing UIM benefits based on the amount it paid in PIP benefits. *Id.* The *Rowzie* court relied on *Richardson* to determine the setoff prohibition in section 38-77-144 applied " 'only to the tortfeasor,' and not to serve as a general prohibition against all reductions of automotive insurance based on upon PIP/MedPay coverage." *Id.* at 168. The court emphasized "the specific finding in *Richardson* that the [setoff] prohibition applies 'only to the tortfeasor.' " *Id.* at 169. Subsequently, the court declared, "As the court in *Richardson* made clear, the South Carolina legislature drafted [section] 38-77-144 with the intention that the setoff prohibition would 'apply only to the tortfeasor.' " *Id.*

Thus, despite the language of section 38-77-144 appearing to prohibit any setoff of PIP benefits, our supreme court declared the legislative intent of that section was to prohibit tortfeasors from reducing their liability by the amount of PIP benefits. *See Richardson*, 313 S.C. at 61, 437 S.E.2d at 45

(finding the legislature "intended the [setoff] prohibition of section 38-77-14[4] to apply *only* to the tortfeasor" (emphasis added)). As discussed above, this court and the Fourth Circuit have followed *Richardson*'s holding.

In this case, the circuit court erred by finding section 38-77-144 prohibited the parties from contracting to setoff PIP benefits by the amount the Cothrans received under workers' compensation law. As discussed above, the setoff prohibition in section 38-77-144 applies only to prevent tortfeasors from reducing their liability by the amount a claimant receives in PIP benefits. Section 38-77-144 does not prohibit an insured and insurer from contracting to reduce PIP benefits by the amount the insured receives under workers' compensation law. Because the Excess Provision allows a setoff only for what the insured receives under workers' compensation law and does not involve any setoff for tortfeasor liability, section 38-77-144 does not prohibit or invalidate the Excess Provision. Therefore, the parties were entitled to include the Excess Provision in the Policy. *See Williams*, 409 S.C. at 598, 762 S.E.2d at 712 (noting parties to an insurance contract "are generally permitted to contract as they see fit").

█ With regard to the Cothrans' argument that State Farm's interpretation of section 38-77-144 would lead to an absurd result because it would allow an insurer to essentially reduce PIP benefits by any payment an insured received, we believe the concern is overstated. South Carolina courts refuse to enforce insurance policy exclusions that render the coverage "virtually meaningless." *See Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 319 S.C. 12, 19, 459 S.E.2d 318, 321 (Ct. App. 1994) (refusing to interpret an exclusion in a way that "would render the policy virtually meaningless, because it would exclude coverage for ... the very risk contemplated by the parties"); *see also Bell v. Progressive Direct Ins. Co.*, 407 S.C. 565, 580, 757 S.E.2d 399, 407 (2014) (explaining courts may use the doctrine of reasonable expectations to interpret a policy if the terms "are ambiguous or conflicting, or if the policy contains a hidden trap or pitfall, or if the fine print takes away that which has been given by the large print"); *S.C. Farm Bureau Mut. Ins. Co. v. Kennedy*, 398 S.C. 604, 615, 730 S.E.2d 862, 867 (2012) (noting "the literal interpretation of policy language will be rejected whe[n] its application

would lead to unreasonable results and the definitions as written would be so narrow as to make coverage merely 'illusory' "); *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 334 S.C. 529, 537 n.5, 514 S.E.2d 327, 331 n.5 (1999) (recognizing an "illusory" exclusion is unenforceable). Thus, if a policy contained a PIP exclusion so broad as to render PIP benefits unobtainable, virtually meaningless, or illusory, an insured would be able to dispute the exclusion without having to rely on section 38-77-144.

Accordingly, we find the circuit court erred by invalidating the Excess Provision based on section 38-77-144 because the setoff prohibition in that section only prohibits tortfeasors from reducing their liability to a claimant by the amount of PIP benefits the claimant receives. Because section 38-77-144 does not prohibit the type of exclusion contained in the Excess Provision, the parties were free to contract as they wished. We reverse the circuit court's holding on this issue.

**PUBLIC POLICY**

State Farm argues the circuit court erred by invalidating the Excess Provision based on public policy. First, State Farm claims the issue of public policy was not before the circuit court and it erred by considering the issue. Second, State Farm contends PIP coverage is not required and our case law expressly disclaims any public policy regarding such coverage.

■ The Cothrans argue the circuit court correctly found public policy prohibits a setoff of PIP benefits by the amount of workers' compensation benefits received. The Cothrans claim the "public policy at issue ... is the right of the employer's workers' compensation insurance carrier to reimbursement for the expenses it accrues as a result of a work-related injury." Specifically, the Cothrans argue public policy prohibits a setoff of PIP benefits because a workers' compensation carrier may have an equitable interest in the PIP benefits.

■ Here, the circuit court erred by finding public policy prohibits a policy exclusion that reduces the amount of PIP benefits by the amount the insured receives under workers' compensation law. "Whether a particular provision in an insurance policy violates the public policy of the state is a

question of law that is reviewed [de novo] by an appellate court." *Williams*, 409 S.C. at 599, 762 S.E.2d at 712. "It is axiomatic that freedom of contract is subordinate to public policy, and agreements that are contrary to public policy are void." *Rhoden*, 398 S.C. at 398, 728 S.E.2d at 480 (internal quotation marks omitted) (brackets removed). However, "[w]e cannot read into an insurance contract, under the guise of public policy, provisions which are not required by law and which the parties thereto clearly and plainly have failed to include." *Smith v. Liberty Mut. Ins. Co.*, 313 S.C. 236, 239, 437 S.E.2d 142, 144 (Ct. App. 1993) (per curiam) (quoting *Barkley v. Int'l Mut. Ins. Co.*, 227 S.C. 38, 45, 86 S.E.2d 602, 605 (1955)).

> Public policy considerations include not only what is expressed in state law, such as the constitution and statutes, and decisions of the courts, but also a determination whether the agreement is capable of producing harm such that its enforcement would be contrary to the public interest or manifestly injurious to the public welfare.

*Williams*, 409 S.C. at 599, 762 S.E.2d at 712. "South Carolina does not require any PIP coverage under its automobile insurance laws and has no public policy regarding such coverage." *Smith*, 313 S.C. at 239, 437 S.E.2d at 144.

Public policy in this state does not prohibit a reduction of PIP benefits by the amount an insured receives in workers' compensation benefits. Our legislature has determined PIP coverage in this state is voluntary. *See* § 38-77-144 (stating "[t]here is no [PIP] coverage mandated under the automobile insurance laws of this State"). Because the legislature has deemed PIP coverage voluntary and not required for the public good, there is no prohibition on the parties' ability to limit the recovery of PIP benefits to certain situations. Thus, there is no public policy prohibition on the parties' ability to contract for a reduction in PIP benefits when the insured receives benefits from another source, e.g., under workers' compensation law. Furthermore, this type of exclusion, which reduces PIP benefits in only a very limited circumstance, does not produce harm "such that its enforcement would be contrary to the public interest or manifestly injurious to the public welfare." *See Williams*, 409 S.C. at 599, 762 S.E.2d at 712 ("Public policy considerations include . . . a determination

whether the agreement is capable of producing harm such that its enforcement would be contrary to the public interest or manifestly injurious to the public welfare.").

With regard to the circuit court's specific finding that public policy prohibits the type of policy exclusion at issue in this case because it prevents the workers' compensation carrier from obtaining a lien on the PIP benefits, we disagree. As noted above, our legislature declared PIP coverage is not required. *See* § 38-77-144 ("There is no [PIP] coverage mandated under the automobile insurance laws of this [s]tate."). Because PIP coverage is voluntary, public policy does not require payment of PIP benefits so that a workers' compensation carrier may obtain a lien against those benefits. If our public policy was such that payment of PIP benefits was needed or desired for the benefit of workers' compensation carriers, the legislature could have mandated that PIP coverage be included with all automobile policies. Also, we find nothing in the relevant statutes to indicate the legislature intended to favor workers' compensation carriers at the expense of automobile insurance carriers. Accordingly, we reverse the circuit court on this issue and find public policy does not prohibit a policy exclusion that reduces PIP benefits by the amount the insured recovers under workers' compensation law.

## CONCLUSION

Based on the foregoing, we reverse the circuit court's grant of summary judgment in the Cothrans' favor because neither section 38-77-144 nor public policy prohibits the type of exclusion contained in the Excess Provision. Thus, the parties were free to include it in the Policy.

**REVERSED.**[4]

WILLIAMS and MCDONALD, JJ., concur.

---

4. We decide this case without oral argument pursuant to Rule 215, SCACR.